## ELLA ANDERSON LAABS v. IRENE LUCILLE (ALSO KNOWN AS LUCILLE) HAGEN.[1]

December 21, 1945.

No. 34,070.

[1]Reported in 21 N. W. (2d) 91.

R. M. *Saltness* and *Ernest F. Jacobson,* for appellant.
*Salmer N. Knutson,* for respondent.

YOUNGDAHL, JUSTICE.

Action to set aside a deed on the ground that it was procured through undue influence. After an adverse decision, plaintiff moved for amended findings of fact and conclusions of law, and appealed from an order denying the motion. Upon discovering that no appeal would lie from that order, plaintiff dismissed the appeal, entered judgment, and appealed therefrom.

The facts are these: Lena Jorgenson (hereinafter called decedent), a resident of Canby, died testate on June 29, 1943, at the age of 81 or 83 years.[2] Her husband predeceased her, having died some time prior to 1936. For some time prior to the execution of the deed in question, decedent was the owner of a house and two lots located in Canby, which property was conveyed by the deed. This property had been used by decedent and her husband as their homestead for many years and had an approximate value of $2,500. At her death, decedent possessed personal property which the court found was worth not less than $6,000. There was no issue of the marriage of decedent and her husband. However, five nephews and nieces survived decedent, one of whom is the plaintiff herein. Defendant is the daughter of a nephew of decedent's husband. She was described as a foster daughter in decedent's will and was so regarded by decedent and her husband from the time she was

---

[2] The witnesses were not certain of decedent's age.

taken into their home at eight or nine years of age. She was reared by them until her marriage, a number of years before decedent's death.

On April 23, 1942, decedent made a will (revoking a previous will in which defendant was the sole beneficiary), in which she gave plaintiff and defendant all her property in equal shares. This will has been allowed and admitted to probate. Subsequent to the execution of the will, decedent was taken to Minneapolis, where she was operated on for a cancerous condition. Thereafter her condition improved, but in February 1943 she suffered a relapse, and from that time until her death on June 29, 1943, she was confined to her home and gradually became physically weaker, although she was not bedridden until a few days before her death.

On April 12, 1943, the deed in controversy was executed whereby decedent conveyed to defendant the property in question, reserving to herself a life estate therein. At the time this deed was executed, decedent was not strong physically, but her mind was clear except for periods of forgetfulness characteristic of old age. Shortly before the deed was executed, decedent informed defendant that she wanted to see H. D. Lueders, cashier of the National Citizens Bank of Canby. Defendant then communicated with Lueders, who went to decedent's home. When Lueders learned that she wanted to execute a deed, he told her that banks are not permitted to draw deeds and that it would be necessary for her to secure the services of an attorney. Decedent then requested Lueders to communicate with O. J. Ostensoe, an attorney of many years' practice and an acquaintance of long standing of the family, for the purpose of having a deed drawn. Accordingly, Lueders telephoned Ostensoe or went to his office, and they both went to decedent's home and discussed the matter of the execution of a deed. Thereupon they went to Ostensoe's office, prepared the deed, and returned to decedent's home, where it was executed. Decedent was sitting up in bed when the deed was read to her. Lueders described what happened as follows:

"Mrs. Jorgenson was sitting up in bed. Attorney Ostensoe read the deed to her and asked her distinctly whether that was her wishes and she said it was, whereupon she proceeded to get out of bed, sit down on a chair at the table and signed the deed." .

Ostensoe and Lueders signed as witnesses, and Ostensoe acknowledged the deed. Both testified that decedent's mind was clear and rational when she signed the deed. Lueders also testified that she transacted her business competently until her death. Ostensoe further testified that no suggestions were made by an outsider at the time of the execution of the deed, that no reason appeared why decedent should not execute a deed, and that he "couldn't see anything out of the way with her mental condition."

■ On appeal from a judgment after trial by the court, no motion for a new trial having been made and no errors in rulings or proceedings at the trial being involved, the questions for review are limited to a consideration of whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. Meiners v. Kennedy, 221 Minn. 6, 20 N. W. (2d) 539; Koch v. Lidberg, 219 Minn. 199, 17 N. W. (2d) 308. Therefore, the narrow question presented here is whether the evidence compels a conclusion of law that there was undue influence exercised in the procurement of the deed.

■ The books are copiously supplied with cases discussing undue influence and the proof necessary to sustain an attack against a deed on that ground. The general principles are now so well known to bench and bar that a protracted discussion of them would serve no useful purpose. Suffice it to say generally that, in order to sustain a charge of undue influence in the execution of a deed, plaintiff must prove that grantor was deprived of a free exercise of his will. Although undue influence may be proved by circumstantial evidence, a showing that opportunity existed for the exercise thereof is not sufficient. It must be proved that undue influence was *in fact* used and was effective. Mere conjecture is not enough. Cases supporting these principles are found in the notes to 6 Dunnell, Dig. & Supp. § 9949-52. Because of dissimilarity in facts, it is difficult,

if not in fact impossible, to find cases exactly in point. Each case must be determined in the light of its own peculiar facts. This is clearly illustrated when one considers the only authorities cited by plaintiff, namely, Claggett v. Claggett, 204 Minn. 568, 284 N. W. 363; Graham v. Burch, 44 Minn. 33, 46 N. W. 148. A reading of these cases immediately discloses that they are not helpful because of the difference in the facts between them and the case at bar.

■ As we apply the well-established principles relating to undue influence to the facts herein, it seems clear to us that the evidence amply sustains the findings of fact and conclusions of law that there was no undue influence used in the procurement of the deed. In reaching this conclusion, we have not overlooked certain items of testimony which would be proper for a trier of fact to consider in determining whether there was undue influence exercised. For instance, there is testimony that after the execution of the deed decedent denied that she had signed a deed because it would not be fair to plaintiff; that decedent stated after the deed was signed that she wanted her property divided equally between plaintiff and defendant; that defendant was present in decedent's home before and during the time the deed was signed and communicated with Mr. Lueders to ask his assistance in the execution of the deed; that decedent was 81 or 83 years of age, infirm physically, and had periods of forgetfulness. This, and other testimony, was proper for the trial court to consider, and no doubt the court did consider this evidence in reaching its conclusion. But the trial court was not bound to accept this testimony as indicating undue influence in the face of the showing by defendant. In defendant's behalf, there was testimony that decedent had stated that she wanted defendant to have the property. The record indicates sufficient reason for this, as stated by the trial court in the finding that decedent and her husband "were the foster parents of the defendant * * * whom they at all times treated and regarded as their own, and she gave each of them the services, companionship and affection of a daughter, and a close reciprocal lifelong relationship continued throughout to exist between them." Moreover, the court could

well find that plaintiff, who resided in Canby, had as much opportunity to exercise undue influence as did defendant, as plaintiff was with decedent much of the time during her last illness. Further, the trial court could properly take into consideration that Mr. Ostensoe, a lawyer well known in the community and an acquaintance of the family, drew the deed at decedent's request and that he and Mr. Lueders, the cashier of the bank, witnessed the execution of the same and observed nothing irregular about the transaction.

Both plaintiff and defendant had the confidence of decedent; both evidenced an affection for her and rendered faithful and loving services for her in her last illness. Yet the court might well find that decedent felt that defendant was entitled to a greater proportion of the property because of the close relationship that existed between them. This is not a case where plaintiff has been disinherited. She, alone, of the nephews and nieces, is the recipient of decedent's bounty. She is receiving with defendant an equal division of not less than $6,000 of personal property, the major portion of the estate. In view of these facts, it seems to us that she has little cause to complain that the homestead, worth about $2,500, was given by deed to defendant, a foster daughter of decedent and reared by her as her own child.

Viewing the record most favorably to defendant, as we are required to do, we do not feel justified in holding that it compels a conclusion that undue influence was exercised.

Affirmed.