# RICHARD VENIER v. W. DOUGLAS FORBES AND OTHERS.[1]

December 27, 1946.

Nos. 34,252, 34,271.

---

[1] Reported in 25 N. W. (2d) 704.

*Fred A. Ossanna, Dwain Ewing,* and *Bauers & Carlson,* for appellant.

*Fowler, Youngquist, Furber, Taney & Johnson* and *F. N. Furber,* for respondents.

JULIUS J. OLSON, JUSTICE.

This was a suit to rescind, avoid, and set aside a sale by plaintiff to defendant Forbes of his interest in a copartnership originally composed of plaintiff and defendants, and to restore to plaintiff his original rights as such copartner, including an accounting of the entire original partnership venture. The partnership operated under the firm name of U. S. Plating Company. The suit was founded upon plaintiff's claim of fraud practiced by defendants upon him to accomplish the sale. Defendants, by appropriate pleadings, put these claims in issue. These issues were exhaustively and competently litigated under the leadership of able and experienced counsel for the parties. In a trial lasting from March 15 to April 5, 1945, both dates inclusive, much evidence was introduced, as shown by a typewritten record of 1,112 pages. In addition, we have briefs totaling 770 pages of printed matter. Obviously, there was no paper shortage here.

The court's 20 findings, each numbered and paragraphed, cover and include every phase of the litigation.

We shall go directly to the determinative issues, *i. e.,* fraud, concealment of fiduciary knowledge, and conspiracy by defendants to defraud plaintiff in procuring a sale of his partnership interest.

On October 12, 1942, the parties to the original suit, by oral agreement, formed a partnership terminable at will. Its purpose was to carry on the business of plating divers metals with chrome. The work was largely, in fact almost entirely, what is often referred to in the record as war work. Each partner was to have a one-third interest in the profits and was to bear losses in equal degree. Defendant Forbes was to furnish the capital funds with which to conduct the partnership activities, but the funds so furnished were to be treated as loans to the partnership and not as capital thereof. A system of accounting from the books and records of the business done and to be done was early set up by a certified public accountant. At the end of each month, the accountant regularly closed the partnership books and prepared and submitted to the partners monthly reports of the business done and the status of the business, showing in detail what the books disclosed. The books and records of the firm were accessible to all partners and at all times, and they had frequent conferences in relation thereto. For some time prior to December 3, 1943, the future prospects of the partnership business had become rather cloudy because of rumors of impending termination of war contracts. In addition, it was brought to the attention of the members of the firm that there were also impending changes in war department regulations relating to the replating of tools, which theretofore had formed a substantial part of the firm's work. This work was originally submitted on a trial basis. It was rigidly inspected by officers of the war department. As stated, the future of the business was dubious because of the possible termination of the war at an early date. Without giving Forbes notice of their intentions, plaintiff and defendant Norval called on Mr. Forbes at his office on December 3, 1943, and in substance and effect informed him that they were dissatisfied with reference to the continuance of the partnership; that they entertained uncertainty as to when and to what extent they could draw profits from the business under the then existing arrangements; that the work was arduous, and long hours were devoted thereto. During all the time from the formation of the part-

nership, each of these men had been paid at the rate of $40, later raised to $65, in "weekly wages or drawing accounts." They informed Forbes that they would like to sell their partnership interests in the business to him. The situation was thoroughly discussed and ended up in this fashion: Forbes told his partners that he did not wish to purchase their interests at book values, because much of the equipment had been acquired at premium prices and was secondhand when acquired; that if the war should end soon and if his loans and advances, then amounting to $13,759.34, were not paid off in the meantime, he would be left with this equipment of little worth; that with these conditions facing all of them, together with the future uncertainties of their business prospects, he proposed that they buy his interest in the partnership at $1,500, with provision for repaying his loans and advances, or that he would buy their interests, paying each of them $1,500. Prior thereto, the partners had agreed that during the fiscal year beginning November 1, 1943, the debt due Forbes "should be repaid to him in approximately equal monthly installments before any further profits * * * should be distributed * * *." Plaintiff and Norval informed Forbes that they would sell and "get out" of the business. Thereupon Forbes prepared an instrument reading as follows:

"December 3, 1943

"This is to acknowledge receipt of $1500.00 in cash from W. D. Forbes in full payment of all my interests, including Assets, Liabilities and leases of the U. S. Plating Company and W. D. Forbes up to this date. Furthermore, I will not claim any of the profits or be responsible in any manner for any debts incurred by the U. S. Plating Company of W. D. Forbes and not be a partner in any manner."

Both plaintiff and Norval executed the instrument, and each received Forbes' check for $1,500. After the sale had been made, both plaintiff and Norval agreed with Forbes that they would continue in the work they had previously been doing as members of the partnership. Thereafter they were so engaged and paid on an hour-

ly wage basis, plaintiff's work continuing until February 3, 1945, when this suit was brought.

A short time after Forbes had purchased the interests of his partners and after he found that his other business operations required a change, he made a proposition to Norval of forming a new partnership with him, since he (Norval) was thoroughly familiar with their partnership affairs and had actively participated therein. Their relations as members of the new firm were to date back to December 1, 1943, the then current fiscal year. Not until December 15 did Norval agree to this arrangement, and even then he reserved the right to withdraw if within 60 days he was not satisfied therewith, accepting in the meantime the wages he was then being paid. Within the designated time, Norval elected to become a member of the new partnership. Thus they operated until December 1, 1944, when the partnership was enlarged so as to include the wives of Forbes and Norval. Thereafter the new partnership continued under written articles of copartnership. That venture proved very profitable. Obviously, it was to plaintiff's financial advantage to set aside his original sale so that he might derive a one-third share of these profits.

The court specifically found that Forbes and Norval did not, at the time of the sale of plaintiff's interest, deprive "him of his rightful share of the surplus and profits then earned and of future profits of said business"; that defendants did not mislead plaintiff in respect to the value of his interest in the partnership; and that the allegations of the complaint in that respect "are untrue." Furthermore, it found that neither defendant made any false or fraudulent representations of any material fact, nor did they commit any acts designed to mislead plaintiff with respect to his rights and interests and of the true financial condition and future prospects of their business; and "That the allegations of the amended complaint in respect thereto are untrue." Further findings fortify and strengthen what we have already recited.

There was no motion for new trial. Instead, upon entry of judgment, plaintiff appealed, and he now seeks to overturn the findings and judgment of the trial court.

Since there was no motion for new trial, no errors in rulings or proceedings at the trial are involved here. The appeal being from the judgment after trial by the court, upon well-settled authority in this state, only two questions arise on appeal, namely, whether the evidence reasonably sustains the findings and whether the conclusions of law and judgment are sustained by the findings. This has been long-settled law. Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461; Meiners v. Kennedy, 221 Minn. 6, 20 N. W. (2d) 539; Laabs v. Hagen, 221 Minn. 89, 21 N. W. (2d) 91.

The question of fraud and misrepresentation to induce plaintiff to enter into the contract to sell and as to whether plaintiff relied on such representations presented fact issues. As such, they were for the trier of fact and not questions of law for the court, where, as here, the evidence with respect to such questions was in conflict. Marshfield Brg. Co. v. Schmidler, 221 Minn. 486, 22 N. W. (2d) 553.

In our latest case on this phase, Prince v. Sonnesyn, 222 Minn. 528, 25 N. W. (2d) 468, we had for consideration a fact situation involving issues practically identical with those presented here. We there concluded and held that the findings of the trial court setting aside, on the ground of fraud, the incorporation of a partnership between plaintiffs and defendant presented fact issues and that it was for the trial court to determine these. The trial court's findings of fraud were sustained. In passing upon this phase, we said that the relationship between partners is essentially one of mutual trust and confidence and that the law imposes upon them the highest standard of integrity and good faith in their dealings with each other. But we also held that conflicts in the evidence are not to be resolved on appeal and that (222 Minn. 535, 25 N. W. [2d] 472) "Such findings, where reasonably sustained by the evidence, will not be disturbed here." (Citing authorities.)

Applying these principles to the facts recited, all of which we find adequately supported, the conclusion is inescapable that the result reached below is right.

In passing, it is not improper for us to mention the fact that, since fraud has not been shown, the question of conspiring to commit a fraud is necessarily determined thereby. In the recent case of Wolfson v. Northern States Management Co. 210 Minn. 504, 508, 299 N. W. 676, 678, we said:

"No action lies, however, for a conspiracy unless it be shown either that the end sought to be accomplished by the conspirators was unlawful or, if lawful, that the means resorted to for its accomplishment were harmful. * * * The mere fact of a combination or conspiracy is not in itself a sufficient basis of liability." (Citing cases.)

Mr. Justice Mitchell, in Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 234, 55 N. W. 1119, 1121, 21 L. R. A. 337, 40 A. S. R. 319, said:

"What one man may lawfully do singly, two or more may lawfully agree to do jointly. The number who unite to do the act cannot change its character from lawful to unlawful. The gist of a private action for the wrongful act of many is not the combination or conspiracy, but the damage done or threatened to the plaintiff by the acts of the defendants. *If the act be unlawful, the combination of many to commit it may aggravate the injury, but cannot change the character of the act.*" (Italics supplied.)

And so here, where fraud was not shown, the bottom of plaintiff's case has dropped out. Nothing remains upon which to base liability.

The judgment is affirmed.