JOHN ERICKSON v. LEONARD I. SINYKIN AND ANOTHER,
*d. b. a.* KENESAW HOTEL.[1]

February 7, 1947.

No. 34,319.

---

[1]Reported in 26 N. W. (2d) 172.

*Simon Meshbesher* and *P. J. Stern,* for appellants.
*George C. Stetson* and *John Ott,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was an action to determine the ownership of $760 in paper currency found by plaintiff while decorating a room in defendants' hotel. Tried to the court, these in substance are the findings:

(1) During the time here involved, defendants were the owners and operators of the Kenesaw Hotel in Minneapolis. On December 26, 1944, they employed plaintiff to decorate several rooms therein. In the course of his work, plaintiff found it necessary "to raise up a rug which was on the floor, and under this rug he found $760.00 in the form of thirty-three old twenty-dollar bills around which was wrapped a new one-hundred-dollar bill."

(2) Plaintiff reported his finding of this money to defendants, who informed him "that they knew the true owner thereof, and that they would deliver said money" to the owner. Upon that representation, "plaintiff delivered the money" so found to them. No evidence was offered at the trial by or for defendants that they knew who the true owner was or that they had made any effort to find him. Instead,

they have ever since kept and even "now retain possession of this money."

(3) "That this money was abandoned by the true owner with the intention of relinquishing all right and title to the same."

(4) "That plaintiff has made proper demand upon the defendants for the return of said money to him, and the demand has been refused."

As conclusions of law, the court determined that plaintiff was entitled to the money, but without interest prior to "the date of these findings" (April 17, 1946). No costs or disbursements were allowed to either party.

Defendants' motion to vacate and set aside the findings or for a new trial was denied. The part of the motion to vacate and set aside the findings included no proposed findings, nor was any specific finding challenged, although, as we have shown, there were four findings, each separately numbered and paragraphed. The alternative part of the motion, *i. e.*, for a new trial, was predicated upon the single assignment. "That the decision of the court is not justified by the evidence and is contrary to law." Judgment in conformity with the findings was entered June 20, 1946, and defendants have appealed from it, "together with all orders made and entered by said court prior to the entry of said judgment."

■ At the outset we are met with the question of what there is for us to review in view of appellant's failure to observe the following oft-repeated rule:

"Where a case is tried to the court and findings are made, the specific finding which is asserted to be without evidentiary support must be challenged in this court by a specific assignment of error." Raymond v. McKenzie, 220 Minn. 234, 239, 19 N. W. (2d) 423, 425.

And also, as said in Estrada v. Hanson, 215 Minn. 353, 356, 10 N. W. (2d) 223, 226:

"* * * There is no particular assignment of error. Rule VIII(3)(d) of the rules of practice of the court * * * [212 Minn. xlii] states: 'Where a finding of fact is attacked as not sustained

by the evidence, it shall be particularly specified.' Failure to follow these instructions presents nothing for review. In re Delinquent Real Estate Taxes, 212 Minn. 562, 4 N. W. (2d) 783. It is therefore unnecessary for us to examine the findings in detail."

This rule was applied in the recent case of Peterson v. James, 223 Minn. 33, 25 N. W. (2d) 300.

■ Equally well established is the rule that on appeal from a judgment, where there has been no motion for a new trial, the only questions for review are whether the evidence sustains the findings and whether such findings sustain the conclusions of law and the judgment. Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461; Meiners v. Kennedy, 221 Minn. 6, 20 N. W. (2d) 539; Laabs v. Hagen, 221 Minn. 89, 21 N. W. (2d) 91. True, in this case there was a motion for new trial, but to be noted is the fact that defendants' only assignment of error on this phase was that the evidence does not sustain the findings. For that reason and within that limitation, we shall consider defendants' contentions on the merits, their appeal being from the judgment.

■ We are limited in this action solely to a determination of the rights and remedies of the parties to the cause. The original owner is unknown. He has made no appearance and is not a party to the action. This is a proceeding in personam, not one in rem. Therefore, until the actual owner appears and establishes his ownership, there can be no final determination of his rights.

■ When plaintiff found this money under the circumstances we have related, he thereby came into physical possession of it. While that possession was a qualified one, he nevertheless had immediate dominion over the money. This possession and dominion as to any third person, including defendants, was adequate to sustain his cause until his adversary showed a better right. That was our holding in Derby v. Gallup, 5 Minn. 85 at p. 101 (119 at p. 136), where we said:

"* * * Possession itself is *prima facie* evidence of title, and sufficient to sustain" an action in trover for taking and converting personal property. "The goods having been in possession of the plain-

tiff, he is not bound to show any other title until the defendants have shown a better [one]."

So, also, in McClellan v. St. P. M. & M. Ry. Co. 58 Minn. 104, 59 N. W. 978. There, plaintiff had made hay from land of which he was in actual possession under claim of title and sought and obtained damages for loss of the hay because of defendant's negligence in permitting fire to escape and destroy it. We held (58 Minn. 107, 59 N. W. 979) that "at least, he made a *prima facie* case for recovery" of its value. In Gaertner v. Western Elev. Co. 104 Minn. 467, 471, 116 N. W. 945, 946, we held that, since plaintiff was in actual possession of certain grain when sold by him to defendant, "It is clear that possession is evidence of ownership."

In the instant case, the trial judge, in passing upon defendants' motion for a new trial, carefully reconsidered the matter of whether the money had been "abandoned or lost," characterizing the situation as a "serious question." After such reconsideration, he—

"reached the conclusion that it was a question of fact for the court to determine * * *. In reaching the conclusion that it was abandoned, the court has taken into consideration circumstances existing since the finding of the money, that is, that the real owner has not stepped forth and claimed it. There is no way of knowing beyond the eighteen-month period how long this money remained under the carpet. It appears to the court that it is a reasonably clear case of an abandonment of the money."

Defendants challenge this finding as not sustained by the evidence. They take the view that since they were operating a hotel they owed a duty to their guests to see to it that property overlooked or forgotten by such guests is taken care of by them until such guest shall appear and demand a return of it. The case most heavily relied upon is Flax v. Monticello Realty Co. 185 Va. 474, 39 S. E. (2d) 308, and the cases there cited. In that case, a maid in defendant's hotel found a valuable diamond brooch in one of the rooms of the hotel. Believing it was the property of the guest occupying the room, she wrapped the brooch in tissue paper and placed it on a dresser in the

room. Plaintiff became a guest in defendant's hotel shortly thereafter and discovered the brooch. He ascertained that it was an article of real worth, estimated by an expert appraiser at $3,750 to $4,000. Having thus learned its intrinsic value, plaintiff, in a conversation with Colonel Consolvo, representing the defendant, said (185 Va. 476, 39 S. E. [2d] 310):

"* * * 'Is finding keeping?' which the Colonel negatived, saying, 'I wouldn't say so. I don't quite understand what you are trying to convey to me.' Flax [plaintiff] then told him how he had come by the piece of jewelry. The suggestion of Col. Consolvo was that the only thing to be done was to place it in the custody of the hotel until it was called for by the true owner. He affirmed that it did not belong to Flax or the hotel. This disposition was assented to."

The question arose as to the respective rights of the parties to the action concerning ownership of the brooch. There the trial court, in setting aside a verdict for plaintiff, said (185 Va. 477, 39 S. E. [2d] 310):

"It is contrary to human experience that the owner of a $3,750.00 brooch would place it in a mattress in a hotel room and intentionally leave it there because of a desire no longer to possess it.

"On the other hand, the probability is so strong as to amount to proof that it was left at the hotel room as a result of inadvertence.

"Failure of the owner to make claim for it may be explained by a number of hypotheses more reasonable than that of voluntary abandonment.

"As the burden was on the plaintiff to prove his case by a preponderance of the evidence, his failure to do so is fatal to his case and there must be a final judgment for the defendant."

On appeal, the trial court's disposition of the case was affirmed, for the reason that (185 Va. 478, 480, 39 S. E. [2d] 310, 311, 312):

"* * * Almost every cited case has some peculiar feature which distinguishes it, in a more or less important degree, from another. *The plaintiff in this case was not the finder of the jewel.* He appropri-

ated it and claimed it as his own. We may say at this time that the maid made no claim for it and does not do so. The claimant by mere coincidence found himself in an advantageous position to assert some sort of right thereto.

\* \* \* \* \*

"\* \* \* As to mislaid and forgotten property, which, we think this unquestionably was, the innkeeper, as the custodian, owed a duty to the owner of the chattel. He is treated in some of the cases as representing the owner and has the paramount custody, notwithstanding any agreement as that alleged. \* \* \*

\* \* \* \* \*

"The plaintiff, Flax, has no legal standing as a claimant to the brooch. Were he successful in his claim, in Biblical language, he would reap where he has not sown and would gather where he has not strawed, an abhorrent thought. \* \* \*" (Italics supplied.)

The facts here are clearly distinguishable from those in the Flax case. Here, no one questions that plaintiff was the *finder* of this wad of old-style paper money. Nor was plaintiff's work at all comparable to the maid's work in that case. It is a matter of common knowledge that a chambermaid's work is nothing like that of a painter or decorator. Chambermaids frequently find articles which their employers' guests have forgotten. Ordinarily, their duty is to report and deliver to their employers the articles so found, in order that restoration to the owner may be made. Here, the wad of currency which plaintiff found had obviously been placed under the rug by someone who wished to hide it. Not until the end of 1944 was it discovered, although the United States treasury department, on July 10, 1929, promulgated an order calling in, for cancellation and redemption, all paper currency then outstanding, and its reissuance in the new form. How long this money had remained under the rug in defendants' hotel no one knows. Unchallenged, however, by the record is the court's second finding:

"That the plaintiff reported the fact of finding the money to the defendants, who told him that *they knew the true owner thereof and*

*that they would deliver said money to the true owner; that upon that basis the plaintiff delivered the money to the defendants;* that there is no evidence to show that defendants knew the true owner or have ever delivered the money to the true owner or that they have reason to know [who] the true owner [is] ; that defendants now retain possession of this money." (Italics supplied.)

Defendants have done nothing to find the actual owner. Instead, they cling to it upon the theory that their possession of it as hotel proprietors now and ever since obtaining it from plaintiff is sufficient to defeat his cause. If their representation to plaintiff was truthful, then, in the language we have italicized, it was their duty to comply with Minn. St. 1945, § 622.11,[2] which provides:

*"Every person who shall find lost property under circumstances which give him knowledge or means of inquiry as to the true owner,* who shall appropriate such property to his own use, or to the use of another person not entitled thereto, without having first made reasonable effort to find the owner and restore the property to him, shall be guilty of larceny." (Italics supplied.)

■■■ The question whether the money found by plaintiff was abandoned by the person placing it in this peculiar and unusual hiding place is an important one. In a general sense, abandonment "means the act of intentionally relinquishing a known right absolutely and without reference to any particular person or purpose." 1 Am. Jur., Abandonment, § 2, and cases under notes 15 and 16. Its characteristic element is the voluntary relinquishment of ownership so that thereby the property subject to such ownership becomes the subject of appropriation by the one who thereafter first takes it. *Id.* § 3, and cases under note 19. Thereby, the former owner of the title abandons whatever right or interest he had in it, "so that it becomes to him as if he had never had any right or interest in it." *Id.* § 3, and cases under notes 1 and 2. While mere lapse of time does not in and of itself establish abandonment, it nevertheless is of persuasive importance on the question of the former owner's intentions.

---

[2]See, M. S. A. § 622.11, and cf. Mason St. 1927, § 10367.

*Id.* § 8, and cases cited. And, since his intention is the important element to be considered, all relevant facts and circumstances may be shown, and considerable latitude is allowed in the taking of testimony. Generally, it is not necessary to support such a claim that there be any expressed declaration on the part of the former owner; rather, it may be inferred from the situation of the property and the conduct of the person who has placed it so as to lead to the conclusion that it has been abandoned. Thus, it has been held that if the conduct of the owner clearly shows an intention not to use the property for the purpose for which he acquired it, the facts in that regard may be shown. His intent in respect to the particular property claimed to have been abandoned "may be inferred from" his conduct "and the nature and situation of the property, without the positive testimony of the owner in affirmation of the fact." *Id.* § 13, and cases under notes 8 and 9. While, as we have said, lapse of time and nonuser may not be conclusive, such facts are competent evidence of an intent to abandon and in many instances "are entitled to great weight when considered with other circumstances" shown in the particular case. *Id.* § 15, and cases under notes 5 and 6.

What has been said accords with our own cases. Thus, in Norton v. Duluth Transfer Ry. Co. 129 Minn. 126, 151 N. W. 907, Ann. Cas. 1916E, 760, we held that a right-of-way easement created by grant may be lost by nonuser coupled with lapse of time. Abandonment in that case was sustained upon proof that the tracks laid and bridges built upon the granted strip had been removed and the right of way had not been used for a period of ten years. Our holding was (129 Minn. 134, 151 N. W. 910) :

"* * * The case presented is one showing an abandonment in fact; that is, the tracks and bridges were removed, and there has been for 10 years a total failure to use the right of way for any purpose."

So, also, in Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589, we sustained the trial court's finding that a contract for the conveyance of land had been abandoned by mutual consent of the parties

thereto. In both cases, lapse of time and failure to assert contractual rights were sufficiently shown to warrant the triers of fact in finding that abandonment had cut off original rights and remedies.

Initially, this money was neither lost nor abandoned. It was purposely hidden, for reasons which seemed adequate to the possessor—no doubt to keep it out of sight of subsequent users of the room so that he might later come back and repossess it. As to the respective rights and remedies of the parties to this cause (and they are the only parties presently involved), we are of the view that in either case plaintiff's rights are superior to defendants' claim. As pointed out in the well-considered case of Roberson v. Ellis, 58 Or. 219, 224, 114 P. 100, 102, 35 L.R.A.(N.S.) 979, it was of no concern to defendants—

"whether the plaintiff proved a qualified property by means of the rules relating to treasure trove or lost property, which the modern authorities make practically synonymous, or whether he makes out an absolute ownership through the discovery of abandoned property. If the property is purposely abandoned by the original owner thereof, it is restored to the common stock, and afterwards becomes the property of the one who first discovers and takes it into his possession.

"If it is really lost property which has become separated from the possession of the true owner without his knowledge, or if it is treasure trove where money is secreted and found by another, it becomes the property of the finder, as against every one except the true owner."

And here, as in that case, the trier and finder of facts might conclude (58 Or. 225, 114 P. 102)—

"that some of these transient people had left the money there designedly, and having gone away to sea or to some distant part of this or another country had found it inconvenient to return for the money, and so had abandoned it. It is possible to abandon property anywhere, even in a warehouse, and it is only when nothing else is shown except the place of finding, that attention must be given to

the distinction of its being found upon the ground, instead of in some place of deposit."

In addition to the texts and cases cited, we have also found the following authorities helpful and of aid to those desiring to make further research: 17 R. C. L., Lost Property; 34 Am. Jur., Lost Property; 36 C. J. S., Finding Lost Goods; Zornes v. Bowen, 223 Iowa 1141, 274 N. W. 877; Hamaker v. Blanchard, 90 Pa. 377, 35 Am. R. 664; Toledo Trust Co. v. Simmons, 52 Ohio App. 373, 3 N. E. (2d) 661; Vickery v. Hardin, 77 Ind. App. 558, 133 N. E. 922; Weeks v. Hackett, 104 Me. 264, 71 A. 858, 19 L.R.A. (N.S.) 1201, 129 A. S. R. 390, 15 Ann. Cas. 1156; Bowen v. Sullivan, 62 Ind. 281, 30 Am. R. 172; 21 Minn. L. Rev. 191, 221.

In the light of adjudicated cases, to some of which we have referred, we think that the question whether the money so found was abandoned or lost was a fact issue and that the evidence reasonably supports the conclusions reached by the trial court. A period of more than 15 years had elapsed since the time when our paper currency was changed until this money was found, and at least another two years have elapsed since then, yet no one claiming to be the actual owner has appeared. Defendants' silence and inactivity cannot be said to have been due to any excess of modesty on their part nor attributable to any good faith in their claimed interest in the original owner's rights. The judgment should be and is affirmed.

Affirmed.