# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1172

_____

| | | |
|---|---|---|
| Triple Five of Minnesota, Inc., a Minnesota corporation, | * * * | |
| Plaintiff/Appellee, | * * | |
| v. | * * | |
| Melvin Simon; Herbert Simon; Melvin Simon & Associates; Si-Minn Developers Limited Partnership, an Indiana limited partnership; Si-Minn, Inc., an Indiana corporation; Mall of America, Associates, a Minnesota general partnership; Minntertainment Associates, a Minnesota general partnership, | * * * * * * * * * * * | Appeals from the United States District Court for the District of Minnesota. |
| Defendants/Appellants, | * * * | |
| Randolph Foxworthy; David Simon; Simon Property Group, a Delaware corporation; MS Management Associates, Inc., an Indiana corporation; Simon MOA Management Company, Inc., an Indiana corporation; MOAC Limited Partnership, a Minnesota limited partnership; Mall of America Company, a Minnesota general | * * * * * * * * | |

partnership; Minntertainment
Company, a Minnesota general
partnership; MOAC Mall Holdings,
LLC; MOA Land Holdings, LLC;
MOA Entertainment Company,
LLC; Does 1 to 20; Simon Property
Group, L.P., a Delaware
limited partnership,

       Defendants.

_____

JV Minnesota One, Inc.;
M.O.A. Enterprises, Inc..;
MOA Investors I, Inc.,

      Amici on behalf of Appellants.

_____

No. 04-1181

_____

Triple Five of Minnesota, Inc.,
a Minnesota corporation,

       Plaintiff/Appellee,

   v.

Melvin Simon; Herbert Simon;
Melvin Simon & Associates;
Si-Minn Developers Limited
Partnership, an Indiana limited
partnership; Si-Minn, Inc., an Indiana
corporation; Mall of America,
Associates, a Minnesota general
partnership; Minntertainment

Associates, a Minnesota general          *
partnership,                             *
                                         *
             Defendants,          *
                                         *
                                         *

Randolph Foxworthy; David Simon;         *
Simon Property Group, a Delaware         *
corporation; MS Management               *
Associates, Inc., an Indiana             *
corporation; Simon MOA Management        *
Company, Inc., an Indiana                *
corporation; MOAC Limited                *
Partnership, a Minnesota limited         *
partnership; Mall of America             *
Company, a Minnesota general             *
partnership; Minntertainment             *
Company, a Minnesota general             *
partnership; MOAC Mall Holdings,         *
LLC; MOA Land Holdings, LLC;             *
MOA Entertainment Company,               *
LLC; Does 1 to 20; Simon Property        *
Group, L.P., a Delaware                  *
limited partnership,                     *
                                         *
             Defendants/Appellants.    *
_____

JV Minnesota One, Inc.;                  *
M.O.A. Enterprises, Inc.;                *
MOA Investors I, Inc.,                   *
                                         *
        Amici on behalf of Appellants.    *

_____

No. 04-2827
_____

Triple Five of Minnesota, Inc.,        \*
a Minnesota corporation,           \*
                                      \*

        Plaintiff/Appellee,      \*

                                        \*
    v.                                  \*
                                        \*

Melvin Simon; Herbert Simon;     \*
Melvin Simon & Associates;        \*
Si-Minn Developers Limited        \*
Partnership, an Indiana limited     \*
partnership; Si-Minn, Inc., an Indiana  \*
corporation; Mall of America,       \*
Associates, a Minnesota general     \*
partnership; Minntertainment       \*
Associates, a Minnesota general     \*
partnership,                      \*
                                        \*

        Defendants/Appellants,   \*
                                        \*
                                        \*

Randolph Foxworthy; David Simon;  \*
Simon Property Group, a Delaware   \*
corporation; MS Management       \*
Associates, Inc., an Indiana        \*
corporation; Simon MOA Management \*
Company, Inc., an Indiana         \*
corporation; MOAC Limited        \*
Partnership, a Minnesota limited    \*
partnership; Mall of America       \*
Company, a Minnesota general      \*
partnership; Minntertainment       \*

-4-

Company, a Minnesota general            *
partnership; MOAC Mall Holdings,        *
LLC; MOA Land Holdings, LLC;            *
MOA Entertainment Company,              *
LLC; Does 1 to 20; Simon Property       *
Group, L.P., a Delaware                 *
limited partnership,                    *
                                        *
        Defendants.            *

_____

No. 04-2828

_____

Triple Five of Minnesota, Inc.,         *
a Minnesota corporation,                *
                                        *
        Plaintiff/Appellee,    *
                                        *
    v.                               *
                                        *
Melvin Simon; Herbert Simon;            *
Melvin Simon & Associates;              *
Si-Minn Developers Limited              *
Partnership, an Indiana limited         *
partnership; Si-Minn, Inc., an Indiana  *
corporation; Mall of America,           *
Associates, a Minnesota general         *
partnership; Minntertainment            *
Associates, a Minnesota general         *
partnership,                            *
                                        *
        Defendants,            *
                                        *
                                        *
Randolph Foxworthy; David Simon;        *
Simon Property Group, a Delaware        *

corporation; MS Management
Associates, Inc., an Indiana
corporation; Simon MOA Management
Company, Inc., an Indiana
corporation; MOAC Limited
Partnership, a Minnesota limited
partnership; Mall of America
Company, a Minnesota general
partnership; Minntertainment
Company, a Minnesota general
partnership; MOAC Mall Holdings,
LLC; MOA Land Holdings, LLC;
MOA Entertainment Company,
LLC; Does 1 to 20; Simon Property
Group, L.P., a Delaware
limited partnership,

          Defendants/Appellants.

        _____

      Submitted: October 18, 2004
        Filed: April 21, 2005

        _____

Before MURPHY, HEANEY, and BEAM, Circuit Judges.

        _____

BEAM, Circuit Judge.

These consolidated cases are before the court on interlocutory appeal from the district court's grant of injunctive relief. We affirm in part and reverse and remand in case numbers 04-1172 and 04-1181. We dismiss case numbers 04-2827 and 04-2828 as moot. Because the district court conducted a bench trial on the equitable claims at issue here, we view the facts in the light most favorable to the prevailing party, Triple Five. Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1192 (8th Cir. 2001).

-6-

## I. BACKGROUND

In 1986, Triple Five secured the land and rights to develop the Mall of America. In 1987, the Simon family[1] and Teachers Insurance and Annuity Association of America ("TIAA") became involved with the Mall project since Triple Five needed financing assistance. TIAA provided $650 million in construction financing, and after construction, retained an equity investment in the Mall for this amount. As of 1992, the Simons (d/b/a "Si-Minn") and Triple Five had formed Mall of America Associates (MOAA), a general partnership. Each owned 50% of MOAA. In turn, MOAA and TIAA had formed the Mall of America Company (MOAC), limited partnership, which was owned 45% by MOAA and 55% by TIAA. MOAC owns the Mall. The same parties owned identical interests in Minntertainment Associates, a general partnership, the owner of the entertainment portions of the Mall. Through these business organizations, the Simons and Triple Five each owned 22.5% of the Mall and Minntertainment.

The MOAC agreement provided that because TIAA provided construction financing, it had a preference in any profits generated by the Mall through a $683 million partnership capital account. TIAA was guaranteed an 8.5% annual return on this account, and any income over that amount would be split between TIAA and MOAA. Unfortunately, the Mall has never generated enough income to cover TIAA's 8.5% income guarantee. But, MOAA did receive income from the Mall venture because it was the manager of the Mall, and therefore annually received 5% of the Mall's gross income. TIAA was also protected against loss from sale of the Mall–if the Mall ever sold for $683 million or less, it would receive the entire purchase price. Any amount over $683 million would be shared by TIAA and MOAA. Additionally,

---

[1]To aid the reader, we generally refer to all defendants as the Simons or the Simon defendants. When necessary, we will refer to the many entities involved separately. The issue of whether and the extent to which the parties are legally distinct will be resolved later in this opinion.

the original MOAC partnership agreement provided that beginning in 2002, TIAA could either: 1) force MOAA to buy the Mall at a price set by TIAA, or 2) allow TIAA to sell the Mall at a price set by TIAA. This is referred to by the parties as the "shotgun buy-sell" provision. Finally, the MOAC contract provided that at any time if the partners (TIAA and MOAA) disagreed on a point material to the operation of the Mall, TIAA could trigger the aforementioned buy-sell provision, even prior to 2002.

In early 1998, TIAA decided to sell part of its share in the Mall. The current dispute arose out of events leading up to and culminating in the 1999 sale of half (27.5%) of TIAA's interest in MOAC to a Real Estate Investment Trust (REIT) known as SPG, the Simon Property Group. SPG is a publicly traded REIT, and the Simon family has a 16% ownership interest in the entity. Triple Five apparently owned no part of SPG.

TIAA contacted MOAA regarding its intention to sell part of MOAC in March 1998. Herbert Simon, a Si-Minn principal, responded with a sternly worded letter, noting that the rights of both Si-Minn and Triple Five should be considered when TIAA sold this 27.5% interest in MOAC. Simon blind copied this letter to Triple Five executives. SPG was not mentioned in the communication. However, at about the same time, the evidence shows that another principal at Si-Minn, Randolph Foxworthy, had begun to generate emails detailing a plan for SPG to purchase TIAA's interest. In December 1998, at an MOAC partnership meeting, TIAA again addressed MOAA and asked for a joint proposal by Triple Five and Si-Minn to purchase half of TIAA's portion of MOAC.

Despite this request by TIAA for joint action between the MOAA partners, in January 1999, TIAA and Simon family representatives met in Indianapolis, without Triple Five's knowledge. After this meeting, the Simons and TIAA began negotiating in earnest SPG's proposed acquisition of the 27.5% interest in MOAC. None of these

negotiations were disclosed to Triple Five. Triple Five first found out about SPG's involvement in April 1999 when Herbert Simon, on Si-Minn letterhead, sent Triple Five a letter detailing the plan for SPG to purchase TIAA's interest. In the letter, he noted that "we began to investigate avenues" to satisfy TIAA's plan to sell, and "[w]e believe we have come up with a structure that satisfies TIAA's desires."

Upset at the news that this deal had taken place without their knowledge, Triple Five began to request information from both Si-Minn and SPG with regard to the transaction details. At this point, relations between Triple Five and the Simons began to turn ugly. When Triple Five began threatening to bring suit over the deal, SPG made a series of offers to allow Triple Five to participate in the transaction. In some of these offers, which occurred after both the SPG and TIAA Boards of Directors had already approved the original deal, Triple Five was asked to release the Simons from liability for any breach of fiduciary duty. SPG also refused to provide information that Triple Five thought was relevant to evaluate the offers. The deal between SPG and TIAA closed in October 1999.

Generally speaking, the sale involved a complicated series of transactions. At the bottom line, however, MOAC and Minntertainment placed a $312 million mortgage on the Mall with Chase Manhattan Bank. TIAA was paid $303.5 million in cash from the proceeds of this mortgage, and SPG received a $3.12 million fee out of the remainder. SPG then paid TIAA $84.5 million in cash and received the 27.5% interest in return.

Triple Five brought this lawsuit on October 29, 1999.[2] The district court bifurcated the legal and equitable claims, and tried the equitable issues in a bench

---

[2]Triple Five initially brought this action in state court, and the Simons removed it claiming federal question jurisdiction. After the federal claim was dismissed, the district court retained jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

trial.[3] Following trial, the district court ruled that the Simon defendants had breached a fiduciary duty owed to Triple Five by concealing the SPG negotiations, by not disclosing the material terms of the transaction to Triple Five, and by usurping the partnership opportunity. The district court imposed a constructive trust in favor of Triple Five on SPG's 27.5% interest purchased from TIAA and ordered SPG to disgorge all profits, net of capital costs, received as a result of its 27.5% ownership interest in the Mall. Finally, the district court amended the MOAA partnership agreement by removing Si-Minn as the general managing partner, replacing it with Triple Five. This latter decision had the effect of making Triple Five the managing partner of MOAC because the MOAC partnership agreement provided that MOAA was the managing partner of MOAC.

Though the district court has not entered a final order in this case (because the legal claims have not yet been tried), the Simon defendants appeal interlocutorily, pursuant to 28 U.S.C. § 1292(a)(1). Also pending before us is Triple Five's motion to limit our jurisdiction to the injunctive relief granted by the district court–enjoining defendants from conducting any Mall affairs outside of the ordinary course of business without the written consent of Triple Five. Triple Five asserts that, pursuant to section 1292(a)(1), the only two issues before us on appeal are whether the district court erred in granting the aforementioned injunctive relief and whether the Simon defendants violated their fiduciary duty of disclosure, the basis upon which the injunctive relief was granted. Triple Five argues that the issue regarding the usurpation of the partnership opportunity and the remainder of the relief granted–the constructive trust remedy and the removal of Si-Minn as managing partner of MOAA–are not presently within our jurisdiction.

---

[3]At the time this appeal was filed, the legal claims were still pending before the district court.

-10-

Under section 1292(a)(1), the Simon defendants may appeal the injunctive portions of an interlocutory order, and any part of the order that is interdependent with the injunctive relief. Fogie v. THORN Americas, Inc., 95 F.3d 645, 648 (8th Cir. 1996). We find that all of the above-mentioned theories and remedies are sufficiently interdependent to confer jurisdiction over the entire appeal.

## II.    DISCUSSION

Having jurisdiction, we review whether the district court correctly analyzed the breach of fiduciary duty issue and the scope of equitable relief granted by the district court. Whether one entity owes another a fiduciary duty is a legal issue reviewed de novo. Advanced Communication Design, Inc. v. Follett, 615 N.W.2d 285, 289 (Minn. 2000). Whether a breach of fiduciary duty has actually occurred is a factual issue reviewed for clear error. Miller v. Miller, 222 N.W.2d 71, 81 (Minn. 1974); see also Fed. R. Civ. P. 52(a). We review the district court's equitable remedies for an abuse of discretion. Foy v. Klapmeier, 992 F.2d 774, 779 (8th Cir. 1993).

### A.    Breach of Fiduciary Duty

Minnesota law imposes the highest duty of integrity and good faith on partners in their dealings with each other. Venier v. Forbes, 25 N.W.2d 704, 708 (Minn. 1946). Persons burdened with such duties are fiduciaries by definition and fiduciaries may not usurp or divert for their own benefit business opportunities that properly belong to the partnership. See Miller, 222 N.W.2d at 78. Thus, Si-Minn, as the managing partner of MOAA, clearly owed a fiduciary duty to Triple Five. As the district court pointed out, the remaining parties named in the breach of fiduciary duty count also owe Triple Five a fiduciary duty because of their relationships to either Si-Minn or MOAA, and these defendants do not challenge this contention. SPG, however, was not named in the fiduciary duty claim, and argues that this omission precludes the district court from imposing remedies that affects its interests. SPG

-11-

also argues that even if it had been named in the pleadings, as an independent and publicly traded third-party, it does not owe Triple Five a fiduciary duty.

Thus, the first issue which must be resolved is whether the breach of fiduciary duty claim against SPG is properly before this court. Pending with this appeal is Triple Five's motion to amend the pleadings to conform to the evidence, which Triple Five first made to the district court pursuant to Federal Rule of Civil Procedure 15(b). Because Triple Five did not include SPG as a defendant in its breach of fiduciary duty count, it now seeks to amend the pleadings to do so. Although Triple Five made this motion to the district court, it did so after this court had acquired jurisdiction over the appeal. Therefore, the district court declined to rule, but noted that if it had jurisdiction, it would grant the motion. Under Rule 15(b), an issue not raised in the pleadings, but tried by express or implied consent of the parties, "shall be treated" as having been raised in the pleadings. Fed. R. Civ. P. 15(b). This motion may be made at any time, even after judgment. Baker v. John Morrell & Co., 382 F.3d 816, 830 (8th Cir. 2004). After reviewing the record, we grant Triple Five's motion[4] because SPG impliedly consented to litigation of this issue. See 6A Wright, Miller & Kane, Federal Practice and Procedure § 1494 (2d ed. 1990) (noting that courts of appeals may grant motions to amend pleadings to conform to the evidence and use Rule 15(b) by analogy). We reject SPG's argument that it did not know or understand that it was defending Triple Five's assertion that it and Si-Minn's business dealings were intertwined enough to make SPG equally liable for the breach of fiduciary duty claim. The trial record indicates otherwise.

Triple Five argues that SPG and Si-Minn are so closely related that they should be considered the same entity for purposes of this case, and particularly for liability

---

[4]Triple Five's motion to *this* court is actually for a limited remand, in order to allow the district court to grant the motion. However, because we may accomplish the same result without remand, we simply construe the motion as identical to the one made to the district court.

-12-

arising from the breach of a fiduciary duty. Triple Five asserts that even though SPG is a separate party and a public company which would normally have no fiduciary relationship to Triple Five, the close connections between the Simon family and SPG impose upon SPG the same duties as those owed by Si-Minn. The district court found that even though SPG was not named in the fiduciary count, the named Simon defendants were affiliated with SPG so closely that their intertwined and interconnected conduct could not be separated.

The evidence established that the Simon family formed SPG in 1993 so that the family would have greater access to capital markets. The Simon family owns 16% of SPG, and has effective control of the entity because it is guaranteed 4 of 13 seats on SPG's Board of Directors, and non-Simon family members are prohibited from owning more than 8% of SPG stock, without Board approval. The Simon family also has "veto power" over major decisions. Further, SPG and Si-Minn share the same office space and Melvin and Herbert Simon and Randolph Foxworthy, are all directors or officers for both entities. In numerous anecdotal incidents, these aforementioned directors and officers did not differentiate between Si-Minn and SPG, especially for purposes of the TIAA transaction. For example, they sent letters detailing the SPG portion of the transaction on Si-Minn letterhead and referred to the TIAA transaction negotiators as "we," even when speaking as Si-Minn officers.

We are not unmindful of the difficulties faced by business people who are principals in related corporate entities. Burg v. Horn, 380 F.2d 897, 901 (2d Cir. 1967) (noting that courts must consider that individuals often serve on several boards and are subject to competing fiduciary duties). However, we agree with the district court that this case presents the worst kind of self-dealing and subterfuge. Although SPG is publicly traded, the connections between it and Si-Minn are far too close for comfort. Even though SPG is a public company with an independent board of directors, its day-to-day decisions were being made by the same people who were decision-makers at Si-Minn. SPG officials used information gained in their capacities

-13-

as Si-Minn directors (and MOAA operatives) to profit individually through SPG participation in this transaction. And, in the process they shirked their individual and partnership duties to Triple Five. Indeed, if SPG/Si-Minn had not used subterfuge to their substantial advantage, the deal with TIAA would not have been fully negotiated before it was communicated to Triple Five. Accordingly, we find that both Si-Minn and SPG owe a duty of integrity and good faith to Triple Five in this particular transaction. Because all of the Simon defendants, including SPG, have a fiduciary responsibility to Triple Five, we move on to examine the district court's findings that they breached these responsibilities.

### 1. Usurpation of Partnership Opportunity

A partner may not appropriate a business opportunity which rightly belongs to the partnership. Miller, 222 N.W.2d at 78. The district court found that the opportunity to buy TIAA's 27.5% interest in MOAC was a partnership opportunity, and this finding is not clearly erroneous. An opportunity that is closely related to the entity's existing or prospective line of business, would competitively advantage the partnership, and is one that the partnership has the financial ability, knowledge and experience to pursue is a partnership opportunity. Id. at 81. The determination of whether an opportunity rightly belongs to the partnership is necessarily one of fact. Id.

The Simon defendants primarily argue that MOAA did not have the financial ability to pursue the opportunity, and cite as an example the fact that MOAA had never made capital contributions to the Mall of America venture. And, they argue that when MOAA was presented with the opportunity to by TIAA's 27.5% interest, it declined to do so. These arguments, especially the latter, ignore the fundamental fact that *Si-Minn* made this decision for the partnership in its capacity as managing partner of MOAA. Si-Minn essentially argues that, this was not a partnership opportunity because they said it was not a partnership opportunity. While it may have

been within the managing partner's prerogative to make such a call, that same managing partner may not then divert its attention and partnership resources toward obtaining that partnership opportunity for itself, through use of an alter ego. See I.P. Homeowners, Inc. v. Radtke, 558 N.W.2d 582, 591 (Neb. Ct. App. 1997) (holding that "'[i]t would be anomalous to permit the usurping partner to hide behind protestations of financial inability in light of the fact that the partner often has substantial control over such circumstances'") (quoting II Alan R. Bromberg & Larry E. Ribstein, Bromberg & Ribstein on Partnership § 6.07(d) at 6:77-6:83 (1996)). In fact, a managing partner owes the highest possible fiduciary duty to his partners. Welder v. Green, 985 S.W.2d 170, 175 (Tex. Ct. App. 1998) (holding that managing partners owe their partners "the highest fiduciary duty recognized in the law"); Saballus v. Timke, 460 N.E.2d 755, 760  (Ill. App. 1983) (noting that where one partner takes on role of manager or director his obligation to deal fairly and openly and disclose completely is heightened). Thus, MOAA's refusal of TIAA's invitation to buy does not affect the partnership opportunity analysis because MOAA's managing partner, Si-Minn, is one of the entities charged with wrongdoing. "Moreover, if [Si-Minn] could finance the deal [which it did], the partnership could probably also have done so." Radtke, 558 N.W.2d at 591 (quotation omitted).

The Simons also argue that the district court wrongly focused on *Triple Five's* ability to obtain financing for the transaction, as opposed to MOAA's financial ability. However the Simon defendants did not raise this argument below, and the ability of Triple Five, a 50% partner of MOAA, to obtain financing is indicative of MOAA's eventual ability to do so. Id. Finally, financial ability is one of several factors to be considered, but is not completely dispositive. Miller, 222 N.W.2d at 81. We find no clear error in the district court's conclusion that this was a partnership opportunity. Thus, we affirm its factual conclusion that the Simon defendants breached their duties as fiduciaries by usurping the TIAA sale.

-15-

## 2.    Violation of the Duty to Disclose

The district court found that the Simons also breached the fiduciary duty of disclosure of their SPG activities to Triple Five.  The district court specifically found that the Simons' subterfuge regarding their negotiations with TIAA prevented Triple Five from participating in the transaction.  As much can be reasonably inferred from MOAA's refusal to attempt to formulate or make an offer of purchase.  Had Triple Five known that the Simon family was keenly interested in acquiring the 27.5% share, it could have prodded Si-Minn, as managing partner of MOAA, to pursue the deal on MOAA's behalf.  Thus, the record bears out the district court's conclusion.

The record shows that Simon representatives began discussing the possible acquisition of TIAA's interest in early 1998.  At the same time, Herbert Simon, acting on behalf of MOAA, wrote a letter to TIAA, with blind copies to Triple Five representatives, purporting to warn TIAA that Triple Five must also be protected in the event that it went through with the sale of half its interest in MOAC.  Also in 1998, TIAA approached MOAA about putting together a proposal to acquire the 27.5% interest, but Simon representatives told Triple Five representatives that Si-Minn had no interest in purchasing it.  As the SPG deal began to come together in early 1999, Simon representatives negotiated with TIAA, but they did not disclose this to Triple Five until April 14, 1999, when Triple Five received a letter explaining that the TIAA/SPG transaction was nearly complete.  These actions are inconsistent with the *heightened* duty to deal openly and fairly with Triple Five.  Timke, 460 N.E.2d at 760.

We agree with the Simons' assertion that they only had a duty to disclose material facts.  Appletree Square I Ltd. P'ship v. Investmark, Inc., 494 N.W.2d 889, 892 (Minn. Ct. App. 1993).  We disagree, however, with their further assertion that the knowledge that TIAA wanted to sell its interest was the only material information Triple Five needed to have.  Triple Five knew that TIAA wanted to sell its share, and

also knew that Herbert Simon sent TIAA a letter saying that Triple Five's interest should remain on the table as a matter of concern. But at the same time, the Simons were beginning negotiations to buy the interest solely for SPG. Not only did the Simons refuse to disclose that fact, but they also come very close to affirmatively misrepresenting their actions. Triple Five also knew that TIAA asked for a buyer's proposal from MOAA. When Triple Five asked its partner how the formulation of a proposal was proceeding, it was told that MOAA had no interest in buying the 27.5% interest. Thus, it is clear that Triple Five was not as uninterested in the TIAA transaction as the Simon entities seem to assert. The record shows that Triple Five was interested, but was led to believe that its partner, and thus, the partnership, was unwilling to pursue the deal. In fact, its partner's goal was to take the opportunity for itself. The district court did not clearly err in finding that the Simon defendants, as partners of Triple Five, and especially as managing partner of MOAA, violated their fiduciary duty of disclosure with regard to the TIAA transaction.

The Simons make several other arguments to avoid liability for both the non-disclosure and the usurpation: this transaction only advantaged Triple Five because the buy-sell shotgun provision can no longer be exercised; post-disclosure participation offers to Triple Five negated the effects of any prior bad conduct; and MOAA's contract provisions protect the Simons from liability. First, we agree with the district court's factual conclusion that Triple Five was greatly disadvantaged by being unable to participate in the TIAA transaction. This outweighs any possible advantage the eventual deal may have brought. It is also clear from the record that the Simons' primary focus in negotiating the deal was not to confer some advantage on Triple Five. With regard to the post-disclosure participation offers, the district court found that these offers lacked sufficient detail and imposed such unreasonably short deadlines that Triple Five could not make a meaningful response. The district court reasonably concluded that these "offers" were not legitimate, and Triple Five was justified in refusing them. Finally, we agree with the district court's conclusion

that Minnesota partnership law prevents partners from contracting away their fiduciary obligations. Appletree Square, 494 N.W.2d at 893.

The district court did not clearly err in finding that the Simon defendants violated fiduciary duties to Triple Five with regard to the TIAA transaction. Simons' arguments to the contrary are unavailing.

## B. Equitable Remedies

We next turn to the remedy portion of the district court's order. The district court concluded that being prevented from participating in the TIAA transaction was Triple Five's sole injury, and it imposed equitable remedies against various Simon defendants. Specifically, the district court imposed a constructive trust in favor of Triple Five on SPG's recently acquired 27.5% interest and it ordered SPG to disgorge all profits, net of capital costs, received as a result of its 27.5% ownership interest in the Mall. SPG was required by the order to offer to transfer its 27.5% ownership interest to Triple Five, and Triple Five, if interested, was ordered to pay SPG for that interest.

It is at this point that we diverge from the district court's analysis of the case. The difficultly with the district court's remedy is that it places Triple Five in the shoes of MOAA. But, it was the MOAA *partnership*, not simply Triple Five as a partner, that lost the opportunity to participate in the TIAA transaction. If the partnership opportunity is usurped, "the opportunity and any property or profit acquired becomes subject to a constructive trust for the benefit" of the partnership. Miller, 222 N.W.2d at 78. See also Cyrus v. Cyrus, 64 N.W.2d 538, 543 (Minn. 1954) ("[W]here one partner purchases real estate with partnership funds and takes the title in his own name, he will be deemed a trustee holding such title for the benefit of the partnership."). Even though an aggrieved partner can sue on his own behalf, Minnesota law only allows a dissociating partner to recover the interest he would

-18-

have received through the partnership. Minn. Stat. § 323A.4-05(b)(2)(ii). Thus, we remand to the district court to correct this by imposing the constructive trust in favor of MOAA, and give MOAA the opportunity to purchase from SPG.[5] If MOAA refuses to purchase the 27.5% interest from SPG, the district court may instead award Triple Five the opportunity to buy one half of SPG's interest at a price calculated by the value outlined in footnote five. The district court's remaining instructions regarding disgorging profits still apply; however, these actions should be taken in favor of MOAA, not simply Triple Five.

The district court also ordered the removal of Si-Minn as the managing partner of MOAA and changed the MOAA partnership distributions from 50-50 to 80-20 in favor of Triple Five, despite the fact that the district court specifically found that there was no fraud, gross negligence, or misappropriation of funds. The Simons argue that Triple Five did not request this remedy until *after* trial, rendering it untimely, and that they were prejudiced by the late request because they could not present evidence on this issue. Finally, as previously noted, this remedy had the domino effect of removing Si-Minn as the managing partner of the Mall, thereby amending MOAA's contract with MOAC, because that contract provides that a Simon-controlled entity shall always be in charge of managing the Mall.[6]

We agree in part with the Simons' arguments regarding this portion of the district court's remedy. The district court's decision to change the MOAA partnership distributions from 50-50 to 80-20 in favor of Triple Five was an abuse of discretion.

---

[5]Despite the Simons' protestations regarding purchase price, we see no abuse of discretion in the district court's determination that the 27.5% interest was worth $81.38 million.

[6]Although it was not exactly clear from briefing, the parties disclosed at oral argument that in fact, a Simon-controlled entity called Si-Minn MOA Management is currently managing the Mall.

Except for the management fee distribution, the partnership has always been a 50-50 partnership, and should remain that way. However, we see no abuse of discretion in its decision to remove Si-Minn as managing partner of MOAA, and replace it with Triple Five. As we have noted above, Si-Minn did not conduct itself in a manner befitting a managing partner who had a heightened duty to protect the partnership and its partner. And as managing partner of MOAA, Triple Five will have effective management control over MOAC (because MOAA is by contract the managing partner of MOAC). Accordingly we find that instead of entirely changing the MOAA partnership distributions, the MOAA contract should be amended to provide that Triple Five receives 80% of the Mall management fee.[7] Even though a Simon-related company may still manage the Mall, it will be Triple Five's responsibility to contract with that party or some other suitable entity. To the extent that TIAA, a non-party to this action, might object to our actions, we have two observations. When the MOAC contract was entered into, TIAA was the controlling partner with a 55% share. It now is a minority partner with only a 27.5% share, and its ability to dictate management decisions is accordingly diminished. Second, our review of the record indicates that TIAA's hands were not exactly unsullied with regard to the 1999 transaction, especially when it failed to notify Triple Five of its negotiations with Si-Minn and SPG as demanded by Herbert Simon in 1998. In this equitable action, we take this into account.

### Appeal Nos. 04-2827, 04-2828

Four months after the district court's order in the prior case, Triple Five requested further relief, labeled "closing clarifications" and "ancillary relief." The district court entered an order June 24, 2004, based on Triple Five's request.

---

[7]The MOAA contract currently provides the opposite–that a Simon-controlled entity will manage the Mall and accordingly receive 80% of the management fee, while Triple Five receives 20% of the management fee.

Specifically, the district court ordered the Simons to indemnify Triple Five from losses and expenses arising out of Triple Five's purchase of SPG's interest in the Mall, and an injunction prohibiting SPG (or any other Simon defendant) from acquiring any interest in the Mall. Simons complain that the district court lacked jurisdiction to enter this June 2004 order.

We find that regardless of whether the district court had jurisdiction to take the action it did on June 24, 2004, the appeals in these two cases are moot. We have found that the district court abused its discretion in fashioning relief. Therefore, the request for and grant of ancillary relief based on the district court's constructive trust remedy is rendered moot by our decision in case numbers 04-1172 and 04-1181.

## III. CONCLUSION

In case numbers 04-1172 and 04-1181, we affirm the district court's liability determinations, and we reverse and remand the equitable remedies portion of the district court order for proceedings consistent with this opinion. We dismiss case numbers 04-2827 and 04-2828 as moot.

_____