## Silcott v. Louisville Trust Company.

(Decided October 24, 1924.)

Appeal from Jefferson Circuit Court
(Common Pleas, Division No. 2).

1. Finding Lost Goods—Rights of Finder of Chattel in Public Place to Possession Superior to Proprietor.—When chattel is discovered in public place, such as hotel, bank, or business house, where public generally is invited and expected to be, proprietor of premises occupies no relationship of agent or fiduciary toward owner, and right of custody of finder is therefore superior to his.

2. Finding Lost Goods—Trust Company Held Entitled to Custody of Bond Found on Floor of Private Room of Safety Vault Department.—Where Liberty bond was found by renter of safety vault box on floor of private room of safety vault department of trust company, to which only patrons of that department were admitted, trust company's right to custody of bond was superior to that of finder, trust company being agent of its customers, and occupying fiducial relationship, though owner was unknown.

ARTHUR B. BENSINGER and J. VERSER CONNER for appellant.

A. M. RUTLEDGE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellant filed his action against appellee alleging
that defendant in connection with its other business main-
tained and conducted a safety vault department, and that
plaintiff rented, used and occupied a safety vault box
in such department of defendant, and that on the 14th
of December, 1921, while plaintiff was in the said safety
vault department for the purpose of using his own box
therein, found on the floor of such vault department ''a
lost one Liberty bond of the par value of $1,000.00;'' that
he notified the agent and employee of defendant he had
discovered and found such bond on the floor, and he and
such agent and servant then entered into an agreement
whereby the plaintiff surrendered the custody of the said
bond to defendant for the purpose of discovering the
owner of the same, and it was agreed that in the event the
owner was not discovered within six months defendant
would return the bond to plaintiff.

After the expiration of six months he made demand
for the return of the bond, which was refused, whereupon
this action was filed.

A demurrer was filed to the petition, but without
awaiting action on the demurrer defendant filed its an-
swer, in the first paragraph of which it is denied that
plaintiff found on the floor in defendant's safety vault
department the bond mentioned, and it is denied that the
bond was lost when so found or discovered by the plain-
tiff; and the alleged agreement set forth in the petition
was denied. Then in a second paragraph it is alleged af-
firmatively that the safety vault department of defendant
is located upon the same floor and immediately adjoining
its general offices, but that access to such vault depart-
ment is not had through the general offices of the com-
pany, but through a separate door opening into said de-
partment, and which door is kept closed and locked and
is opened by an attendant of that department only when
admission is desired by a customer; that a daily register
is kept by such department in which those who enter the
safety vault department sign their names, giving the
number of their box and the hour of their admission
thereto; that in the large vaults in said department are a
number of individual safes or compartments which de-
fendant rents to its customers for the safekeeping of their
money, securities and other valuables, and that in each of

said compartments is a metal box in which such money, securities and valuables may be placed and held; that access to these compartments or individual safes can be had only by the use of two keys, one of which is kept by the customer and the other by the attendant in charge; that for the protection and convenience of those who use said safety vault boxes defendant keeps and maintains a number of small private rooms furnished with a chair and desk, immediately in the rear of the large vault, each of which rooms has a door entering into it with a bolt or fastening on the inside for the further safety of those using and occupying said rooms; and that this was the situation, and the mode and method of conducting and operating said safety vault department at the time plaintiff discovered the said bond and returned it to defendant; that said bond so found by the plaintiff was found in one of the said private rooms so maintained by this defendant for the use and occupation of its customers,

> "and rightfully belongs to and is the property of a customer of this defendant."

It is also alleged that the bond at the time it was found and returned was not lost,

> "but was in the possession and in the care and keeping of this defendant for the benefit of the owner thereof, who was one of this defendant's customers, and that this defendant still holds and retains said bond and is entitled to hold and retain the same for the use and benefit of the real owner thereof when he shall be found; that defendant has made and is still making diligent effort to ascertain and discover the owner of said bond, but so far has not been able to find out the owner thereof. Defendant further says that it will continue to make search for the owner, and believes that such owner will yet be discovered."

The plaintiff filed a demurrer to the second paragraph of the answer.

On consideration of the two demurrers the court overruled the demurrer to the second paragraph of the answer and sustained the demurrer to the plaintiff's petition, but granted plaintiff time in which to amend. Thereafter, however, plaintiff declined to plead further and his petition was dismissed.

It will be observed that neither party asserts ownership to the bond, and that the only question is, as between them, which is entitled to its custody.

There is a lengthy and interesting discussion in the briefs as to whether under the admitted facts the bond was lost or only mislaid, and while we do not think that question necessarily controlling, we are of opinion it was in fact only mislaid because it was when discovered in the custody of the owner's agent, or at least one owing him the duty of preserving it for him.

The rule is that when a chattel is discovered at such a place, and under such circumstances as indicate the owner has involuntarily, or accidentally, parted with its custody, the finder has the right of custody against all others except the owner, and especially where the chattel is found at a public place such as a hotel, a bank or a business house where the public generally is invited and expected to be; in such circumstances the proprietor of the premises occupies no relationship of agent or fiduciary toward the owner, and the right of custody of the finder is therefore superior to his. But here the bond was found in a private room of the safety vault department of a trust company—a room to which there was admitted only a limited class of persons, that is, such persons as were patrons of that department and had boxes in the safety vault. They were in every sense customers of the trust company, and that company was at all times in a broad sense the custodian of such valuables as they might have in their boxes. It might be said they were joint custodians, for it is alleged and undenied that to get into one of those boxes it was necessary to use two keys, one committed to the custody of the renter of the box, and the other retained in the custody of the company, so that it required their joint action not only to enter the box rented by the customer, but it required the voluntary act of the company through its agents to enable even a customer to get into that compartment or to get into his own box, or the private rooms provided for such customers. From the allegations of the answer, therefore, it must be true almost beyond peradventure that any chattel found in one of these private rooms, access to which was had only by persons renting the boxes, must have been the property of one of the trust company's customers, and that any property, whether left in the customer's box or left in this private room, was in a true sense in the custody of the trust company as the agent of its customer, or that at least it occupied toward its customer some fiducial relationship which imposed upon it the duty of caring for his property, whether the owner was known or unknown.

We find then that the bond when found or discovered by appellant, while not in the actual custody of the owner, was in such a place as imposed a duty upon the trust company to preserve the property of its customer. That is, in the absence of the actual custody of the owner, the trust company was in custody of it for the benefit of the owner, although the owner was not known, but was known to be a person to whom it owed a duty.

When the trust company, not knowing who the owner was, but knowing that it owed to the owner who was its customer a duty, and so knowing acquired the actual custody of the bond from the finder, it being the representative of the owner, whoever he may be, and owing to him a duty which the finder did not owe, was entitled to the custody as against the finder because, owing such duty, it represented the owner, and its custody as such fiduciary might properly be deemed the custody of the owner himself.

As recited the question of title is not here involved, and what might be the ultimate rights of the trust company if the owner is never found, it is wholly unnecessary to determine.

Many cases appear in the books about lost chattels, and the distinction between lost and mislaid chattels has often been pointed out, but we find nowhere a case presenting the precise question here presented.

If the bond had been found by appellant on the street or on the floor in a hotel, or in the public part of a banking institution or business house, or any other place where the general public is expected to be, his right to the custody as against all but the real owner would be clear; but here he finds the bond in a private room where only a limited class of people have the right to be or can be, and that class composed of the customers of a trust company which is the custodian not only of the private room where alone its customers may be, but of their boxes in its safety vault. We therefore find no difficulty in saying that the bond on the floor when picked up by appellant was in the custody of the trust company as the representative or agent of one of its customers who was the owner, and that appellant properly turned the bond over to such custodian as the representative of the real owner who was unknown to them both.

The case nearest to this in its facts is Foster v. Fidelity Safe Deposit Co., 264 Mo. 89 (L. R. A. 1916A 655). In that case it was held that money left on a desk

in a private compartment of a safety vault company is not lost in a legal sense, although the person who left it there is not known, and that a customer who discovered it is not entitled to its custody as against the deposit company. The only distinction between that case and this is that there the money was found on the desk as if it might have been purposely placed there and forgotten by the owner, while in this case the bond is alleged to have been found upon the floor at a place which it may not be presumed an owner would purposely place it.

This difference in the facts cannot be deemed material, for whether the bond was discovered on the desk or on the floor, it was in either event in the custody of an agent of the owner, or one who in the capacity of a fiduciary owed him some duty. If appellant had not discovered the bond, it being at the time in a private compartment of the trust company to which it and its officials and agents and a limited class of customers alone had access, would almost necessarily have later been discovered by some one of them.

There seems to us no escape from the conclusion that whether the bond was discovered on the desk or on the floor it was in law at the time in the custody of the trust company whose duty it was to retain that custody for the benefit of its customer, although that customer be unknown.

All rules of law must be so interpreted when applied to the facts of a given case as to bring about practical justice if possible. If the owner is ever discovered he may with less trouble and expense recover possession of his property from the trust company who owed him a duty than from appellant who owed him no duty. It is also more probable the trust company will hereafter discover the owner, its customer, than that appellant will.

The custody of the chattel when discovered by appellant being in one who owed a duty to the owner, such custodian must be treated as representing the owner, and as such representative has a prior right to the custody; and notwithstanding the agreement alleged it was the duty of such custodian to refuse the custody to appellant.

Judgment affirmed.