Grace Pyle et al., Appellees, v. Springfield Marine
Bank, Appellant.

Gen. No. 9,514.

Opinion
filed October 25, 1946. Rehearing denied December 28, 1946. Released
for publication December 30, 1946.

SORLING, CATRON & HARDIN, of Springfield, for appellant; ROBERT D. PATTON and PHILIP E. HANNA, of counsel.

HOMER D. MCLAREN, of Springfield, for appellees; VICTOR HEMPHILL, of Carlinville, of counsel.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is a replevin action to recover possession of a United States Treasury bearer bond of the face value of $1000 discovered by plaintiffs in defendant bank's

safe deposit vault room. The circuit court's judgment awarded the custody of the bond to the plaintiffs, and this appeal follows.

The complaint charges that on October 20, 1941, the plaintiffs entered the safety vault compartment of defendant bank, obtained their safety deposit box, proceeded to a room for the purpose of examination of the contents of the box, and sometime thereafter found the bond in question on the floor; that they delivered said bond to an officer of the bank with a statement of the incident; that such bond was lost by some unknown person and found by plaintiffs in a portion of the bank open to and for the use of the public, by reason of which the bond belongs to plaintiffs as found property.

The answer of the bank denies that the portion of the bank in which the bond was discovered was open to or for the use of the public and denies that the bond belongs to the plaintiffs, as found property or otherwise. The answer further alleges that said portion of the bank was private and was used only by safety deposit box customers of the bank for the private and secret examination of the contents of their respective deposit boxes; that the bank was, with the true owner thereof, the joint custodian of such bond while it remained in the vault department, or the agent of the true owner of such bond, with the duty to hold such bond for its owner as long as it was in said vault department.

All of the material facts are undisputed. It appears that the bank maintained a safety vault department in its basement entirely separate from the banking rooms which were open to the general public. Access to the basement vault department was through a metal grill gate which was kept locked during such time as the vault itself was open, and was opened by an attendant only for ingress and egress of customers. The vault department consisted of the vault proper

where the lock boxes were located, into which no one other than the attendant was permitted to enter, and an adjacent vault room within which were a number of small booths for the convenience of the customer in examining the contents of his deposit box. When the vault was closed for the day, the metal gate was unlocked and employees of the bank had access to the vault room. A daily register was kept into which those customers who entered the vault room signed their names, giving the number of their box and the hour of admission thereto. In the vault itself were kept a number of individual safes which were rented to bank customers, each safe containing a metal box, access to which could be obtained only by the use of two keys, one kept by the customer and the other by the attendant. Each booth in the room adjacent to the vault was furnished with a waste basket, stool, and glass counter, and had a door with a lock thereon. This door automatically closed and locked when the user left the booth. Customarily, the attendant would then open the door of the vacant booth, briefly examine the contents and adjust the door so that it would remain ajar for the convenience of the next user. The plaintiffs had such a lock box rented from the defendant and, as customers, entered the vault room under the procedure above set forth. Upon receiving their box and entering one of the 11 booths, they discovered the bond in question on the floor of the booth, and turned it over to the attendant. The bank attempted to locate the owner of the bond, by contacting all renters of lock boxes, and by other means, but was unable to ascertain such owner.

It is pertinent to observe that a determination of this case involves only the right of custody of such bond and not the ownership thereof.

It does not appear that any Illinois reviewing court has heretofore passed upon a case involving a state of facts similar to those here involved. However, in the

Kentucky case of *Silcott v. Louisville Trust Co.*, 205 Ky. 234, 265 S. W. 612, there is much similarity in the factual situation. In that case, it appeared that the plaintiff, while in defendant's safety vault department as a customer, found a $1000 Liberty Bond on the floor of a private booth within the vault department. He delivered the bond to the bank and later started suit to recover possession. An answer was filed setting up that the safety vault department was kept entirely separate from the general offices and that access was obtainable only after registration by the customer; that there were a number of small private rooms to the rear of the vault for use by the customers, each room having a door with a lock on the inside, and that the bond was found on the floor of one of these small rooms. The court affirmed the judgment of the trial court which dismissed the finder's petition, and said: "Therefore it must be true almost beyond peradventure that any chattel found in one of these private rooms, access to which was had only by persons renting boxes, must have been the property of one of the trust company's customers, and that any property, whether left in the customer's box, or left in this private room, was in a true sense in the custody of the trust company as the agent of its customer, or that at least it occupied toward its customer some fiducial relationship which imposed upon it the duty of caring for his property, whether the owner was known or unknown."

In the case of *Foster v. Fidelity Safe Deposit Co.*, 264 Mo. 89, 174 S. W. 376, certain money was found on the desk of a safe deposit department booth, and in holding that the deposit company rather than the finder was entitled to the custody of the money until the true owner appeared, the court said: "Now, in whose possession was the money when discovered by plaintiff? It could scarcely have been more in defendant's possession, unless it had been in the pocket of

one of its officers. It was not only in defendant's place of business, but was in a separate apartment, from which the public was excluded; and, more than that, it was on a desk in a little private compartment kept under the immediate and constant guard and supervision of one of the defendant's attendants. A roguish street urchin if by possibility he had gained access to this place and discovered the envelope on the desk, would have had the same right to it that plaintiff had. Suppose the attendant had observed the urchin as he found it; would he have been justified in letting him carry it off or would it have been his duty to assert defendant's right of possession and take it from the boy? The answer is plain.''

In the case of *Toledo Trust Co. v. Simmons,* 52 Ohio App. 373, 3 N. E. (2d) 661, money was found on the floor of a bank lobby, access to which was through an electrically operated door, opened to patrons of the safe deposit department and persons visiting those officers of the bank whose offices were located beyond this lobby. The court awarded the money to the finder because persons other than patrons were admitted to the lobby, and said: *''This money was not found in the safe deposit vault, nor in the safe deposit doorway,* but was found on the floor in an entryway or small lobby through which many persons passed every day; persons who were not customers of the safety deposit department of the bank, and some persons who were not even customers of the bank at all, were allowed by the bank to go through this passageway or lobby to see various employees of the bank for personal calls . . . . *Under the law, in order to sustain the contention of the bank, we would have to assume that it was owned by a customer of the safety deposit department of the bank.* No such assumption can be entertained, considering the place where it was found, when the evidence is not disputed that many other persons, some of them not even on

bank business, passed through that entryway daily." (Italics added.)

We have carefully studied the numerous cases cited by both parties to this cause, as well as the expressions by text writers on the subject, and reach the conclusion that the controlling question in the case is whether or not the place where the bond was found was public or private. If private, it is immaterial whether the property was lost or only mislaid. The bank maintained its safety deposit department for the accommodation of a limited number of persons who paid a rental fee, and in so doing, the bank incurred certain possible liabilities and had certain duties imposed upon it, in providing a safe place for storage of the boxes, and in preventing unauthorized persons from gaining access to the contents. In furtherance of its plan of protecting its lock box patrons and also in protecting itself from incurring liability, it located its safety deposit department entirely separate and apart from its public banking room, barred the entrance with a locked metal door, and placed an attendant in charge who required registration of all lock box patrons who desired entrance. Under these circumstances, can it be said that this was a public place? We believe not. The manner of operation and control was highly restrictive. A limited class of persons was licensed to enter under circumstances giving the deposit vault department the characteristics and attributes of a private place. As such, any property either lost or mislaid in the department, properly was deliverable to the bank as agent or trustee for the true owner, whether known or unknown.

It is urged by plaintiffs that the trial court found that the location was a semi-public place and that the bond was lost property, therefore such findings are conclusive if not manifestly against the weight of the evidence. The judgment order appealed from contains no such findings, but only finds that plaintiffs were

entitled to the possession and custody of the bond. An opinion not embodied in, nor made a part of, a judgment order is not appealable.

The judgment of the circuit court is reversed and remanded with directions to enter judgment for appellant for the right to possession and custody of the property until the lawful owner is ascertained, and for costs.

*Reversed and remanded with directions.*