## Burnley v. First National Bank of Delaware County

*Albert Blumberg*, for plaintiff.

*Robert W. Beatty*, for defendant.

TOAL, J., November 17, 1953.—This case was tried before Toal, J., without a jury. From the testimony, we find the following facts:

1. The name of plaintiff is John L. Burnley, and he resides at Fair Acres, Lima, Delaware County, Pa.

2. The name of defendant is the First National Bank of Delaware County, a banking corporation organized and existing under the laws of the United States of America, with its principal place of business located at State Street and South Avenue, Media, Delaware County, Pa.

3. Defendant is the successor of the First National Bank of Media, a banking corporation, which operated a banking business at State Street and South Avenue, Media, Delaware County, Pa., by virtue of the consolidation of that bank with the Swarthmore National Bank and Trust Company under the Charter of First National Bank of Media as of the close of business on June 30, 1953.

4. On or about May 24, 1946, plaintiff was employed by defendant's predecessor, First National Bank of Media, as a janitor on the premises of the bank at its aforesaid address.

5. At the date and place aforesaid, after the close of regular banking hours, plaintiff was lawfully in and upon the aforementioned premises of defendant's predecessor, First National Bank of Media, and was then and there lawfully engaged in the process of cleaning the premises, and he was then and there cleaning and sweeping out one of the booths used for the examination of contents of safety deposit boxes by customers of defendant's predecessor.

6. At the time and place aforesaid, plaintiff was engaged in the act of sweeping discarded papers and other trash from a table in one of the booths to a wastepaper basket on the floor of the booth, and while he was so engaged, one of the discarded papers attracted the attention of the plaintiff whereupon he then and there removed it from the waste-paper basket, and upon examination thereof found the same to be an envelope which contained 50 bills of United States currency, in the denomination of $20 each, or a total sum of $1,000 in cash, which sum of money had been lost, discarded or abandoned by some person or persons unknown and which envelope bore no identification marks thereon or therein, and there being no other evidence on or in the envelope to indicate the identity or whereabouts of the lawful owner thereof.

7. On the following morning, to wit, on or about May 25, 1946, plaintiff turned over the envelope and the money unto a proper officer of the bank, for the purpose and with the understanding that the bank would return the same to the person or persons who lost the same, providing such person or persons could prove rightful and lawful ownership thereof.

8. From the time of the finding of the money by plaintiff as aforesaid, until and including the present time, no person or persons whomsoever has or have

presented any claim to defendant or its predecessor with respect to the money, nor has any evidence been submitted to or discovered by defendant or its predecessor as to the identity of the rightful or lawful owner or owners of the money, and the identity of the loser of the money has always been and still remains unknown.

9. A reasonable time, to wit, a period of time in excess of six years, has elapsed since the finding of the money.

10. On or about September 3, 1952, plaintiff made formal demand upon defendant's predecessor, the First National Bank of Media, and has since made repeated demands upon defendant and its predecessor, for the sum of $1,000, but both defendant and its predecessor have failed, neglected and refused to pay the same or any part thereof unto plaintiff.

11. Defendant is not entitled beneficially to the money found by plaintiff and has no interest in said money except as a gratuitous bailee of the person lawfully entitled thereto.

12. By reason of the facts above set forth, plaintiff, as the finder of lost or abandoned money, is entitled to receive the same from defendant, and defendant is under a legal obligation to turn same over to the plaintiff at this time, and plaintiff is entitled to a verdict and judgment against defendant in the sum of $1,000.

## Discussion

Plaintiff commenced an action in assumpsit against defendant to recover the sum of $1,000 to which plaintiff claims to be entitled by virtue of having found same on defendant's premises on or about May 24, 1946. Defendant filed an answer admitting generally that plaintiff found the money and turned same over

to the bank but denying that defendant is under any legal obligation to turn same over to plaintiff. It is defendant's contention that the money had been mislaid by some person or persons unknown, on a table in a safe deposit booth of defendant bank, and that the bank is under a fiduciary obligation to retain and hold this money for the benefit of the true owner, whoever he may be. Defendant admits that the decision in this case hinges on the determination of a very narrow fact. Was the money found by the plaintiff *lost* or was it *mislaid* in the legal sense of those words? Defendant further admits that if the court rules that this money *was lost*, plaintiff is entitled to recover, but if the money *was mislaid* the finder has no right to possession against defendant. We must therefore apply the facts of this case to the law respecting lost and mislaid property.

It is settled law that the finder of lost property has a valid claim to the same against all the world, except the true owner: Hamaker v. Blanchard, 90 Pa. 377 (1879). The fact that the finder was an agent, servant or employe at the time of the finding does not create any exception to the general rule. See A. L. I. Restatement of the Law of Agency, §388, comment c:

"If a finder other than a servant is entitled to retain goods lost or mislaid, the fact that the finder is a servant and finds them upon his master's premises or when he is engaged in his master's business does not require him to surrender them to the master, unless the servant is employed to find such goods or to take charge of such goods, if found, or unless it has been agreed otherwise between them."

It is recognized in Pennsylvania that employes "will be encouraged to fidelity by protecting them in equality of rights with others": Hamaker v. Blanchard, supra, at p. 380.

The fact that the money was found on the business premises of the finder's employer does not deprive the finder of his legal rights. In the case of Tatum v. Sharpless, 6 Phila. 18 (1865) we find the following language covering this point:

"The important point in these decisions was that the *place* in which a lost article is found does not constitute any exception to the general rule of law that the finder is entitled to it as against all persons except the owner. The right of the finder depends on his honesty and entire fairness of conduct. The circumstances attending the finding must manifest good faith on his part. There must be no reason to suspect that the owner was known to him or might have been ascertained by proper diligence."

In the case of Carr v. Summers, 59 D. & C. 6 (1947), the court discussed the circumstances under which the money was found and the following language of the court is certainly helpful in the case at bar:

"Finally, the circumstances under which the money was found should not prevent recovery. In the cases in which an employe finds lost articles, the finding is usually in the course of his duty, and the opportunity to find the article generally results from the nature of his employment. The conductor, at the end of his trip, examined his car for items that might have been left behind by departing passengers; the house-servant, after a party, clears the tables and cleans the floors, incidentally looking for things that might have been dropped by the guests. *If they find something, and it is unclaimed, the law permits them to retain or recover from the bailee that which was found.* 'A rule of law ought to apply to all alike': *Hamaker v. Blanchard,* supra at 380; and we shall not apply a different rule to a police officer if he has acted honestly and with 'entire fairness of conduct' and the circumstances attending the finding 'manifest good faith on his part'.

Fundamentally, these are the things upon which the right of the finder depends: *Tatum v. Sharpless,* supra at 20."

The fact that the money in the instant case was found in a safe-deposit booth or compartment of defendant bank where plaintiff was employed does not preclude plaintiff from recovering. He acted honestly and in good faith and voluntarily turned over possession of the found money unto the proper bank officials so that they might endeavor to locate the true owner. All such efforts to locate the true owner having been fruitless for a period in excess of six years, the only logical inference to be drawn is that the money was definitely *lost or abandoned* and will never be claimed by any one other than the finder. This entitles the finder, rather than the owner of the premises, to keep the money at this time.

We find in the instant case that the money found by plaintiff was lost or abandoned. It was therefore not mislaid to be reclaimed by the true owner later. See the case of The Toledo Trust Co. v. Simmons, 52 Ohio App. 373, 3 N. E. 2d 661 (1935). We find that plaintiff is the finder of lost money and has a valid claim to same against all the world, except the rightful owner.

### Conclusion of Law

1. Plaintiff is entitled to have judgment entered in his favor.

### Order

And now, November 17, 1953, the prothonotary shall give notice to the parties, or their attorneys, forthwith of the filing of this decision, and if no exceptions hereto are filed with him within 30 days after service of such notice, shall enter judgment hereon in the sum of $1,000, without interest, in favor of plaintiff, John L. Burnley, and against defendant First National Bank of Delaware County.