## THELMA DENNIS v. NORTHWESTERN NATIONAL BANK.

81 N. W. (2d) 254.

February 21, 1957—No. 37,018.

*Edward M. Sullivan,* for appellant.
*Rodger L. Nordbye,* for respondent.

NELSON, JUDGE.

Plaintiff appeals from order of trial court denying her alternative motion for judgment notwithstanding the verdict or a new trial.

The question involved is whether currency, contained within an unmarked envelope, found by an attendant employee of a bank, in area restricted and set apart as the bank's safety deposit box vault for the use of its customers upon payment of a rental fee, is as a matter of law, under the circumstances, properly held by the bank as custodian for the true owner and entitled to be so held as against the claim of the employee-finder.

At the trial below before a jury, the court, at the close of the testimony, and after both parties had moved for directed verdict in their favor, held the bank to be the custodian of the true owner as a matter of law, denied plaintiff's motion, and directed the jury to return its verdict in defendant's favor.

Plaintiff assigns the denial of its motion for a directed verdict as error and maintains that the verdict is contrary to law, not justified by the evidence, and further that the court committed error in its failure to submit fact questions to the jury for findings.

The trial court took the position, and we believe rightly so, that the determinative facts were not in dispute. Plaintiff claims that while she was employed by defendant bank as an attendant in the safety deposit vault, on August 2, 1948, she found an unmarked envelope which contained $1,500 in currency on the floor of a passageway or corridor therein. The passageway led from the vault where the safety boxes are into the section where booths are provided for the convenience of the bank and its safety vault patrons. No patron enters without registering at an outer window and presenting his authenticated ticket to a guard who checks it at a barred gate, the only entrance to the box vault and coupon booth area. This restricted area is in the basement of the bank and under the joint control of the safety deposit department and the auditing department of the bank. The facts are that plaintiff was at the time employed as an attendant to help and assist the customers who were admitted to the vault and the coupon booths. She testified that at

the particular time when the money was found the attendants alternated at lunch and she was checking the rooms in the back where the customers go for privacy.

Plaintiff upon being asked the question: "Now, directing your attention to this day that you found the money, will you tell the jury what occurred?" answered:

"Yes, I was in the back. There was a guard at the entrance of the vault, and there are two, I think two, three attendants in the vault, and then there is a guard that is at the entrance of the back rooms. Well, Mr. Roth had gone to lunch, and we would alternate at lunchtime and I took his place for the forty-five minutes that he went to lunch, and we were quite busy that day, and there were a lot of people that went in the back coupon rooms and would be locked in the rooms. When they leave the room, they would slam the door shut. Well, we had a key for that and we would have to go and open the door to see if any valuables were left, and we would try and check each room before a new customer would come in to it, you know, to check the rooms to see if anything had been left. This particular day I was checking the rooms. We had to call out the numbers of the rooms to the attendant in the vault, who would put the customer's number on their admission ticket, and as I was coming around, I looked on the floor and there was a package or an envelope."

The testimony of the manager of the safety deposit department indicates that on August 2, 1948, at about 1:05 p. m. when the money was found, 334 persons had had access to their safety deposit boxes going through the routine admittance requirements for entry into the safety deposit vault.

Plaintiff turned the envelope over to a Mr. Sanford, one of the guards, but she did not count the money before doing so. He in turn took it out to a Mr. Simpson of the safety deposit department. Mr. Hilliard of the same department later called plaintiff to the office and showed her the entry or notation in a book which included her maiden name (she was unmarried at the time) and the date the

item was found. She was unable to recollect whether the amount of the money found had been entered.

The owner of the money has failed to appear and demand his property. His true identity remained unknown at the time of the trial.

Plaintiff brings her action in conversion for the amount of the money found by her and turned over to the bank. The basis of her action is that she is the finder of lost property and that the defendant now has had a reasonable time in which to find the true owner.

Plaintiff asserts that the lower court should have submitted the question of whether the money was lost or abandoned to the jury as a fact issue for its finding. She cites M. S. A. 622.11; Erickson v. Sinykin, 223 Minn. 232, 26 N. W. (2d) 172, 170 A. L. R. 697, with Annotation at 706; Toledo Trust Co. v. Simmons, 52 Ohio App. 373, 3 N. E. (2d) 661, as controlling cases upon the facts.

■ We are not aware of any Minnesota case which has considered or passed upon a similar fact situation. In the Erickson case the facts justified the lower court in finding that the owner had abandoned the property. In that case a painter engaged to decorate a room in what was known as the Kenesaw Hotel found a roll of old currency under the carpet and turned it over to the hotel management and the true owner was never located. The painter, having sued to recover the money, was held entitled to it, and this court sustained the findings stating that if property is purposely abandoned by the original owner thereof it is restored to the common stock, and afterwards it becomes the property of the one who first discovers and takes it into his possession. This court by way of comment on the facts in that case noted that the work of the painter and decorator who found the roll of old money under the carpet was not comparable to a chambermaid's work, whose duty is ordinarily to report and deliver to the employers the articles so found in order that restoration to the owner may be made. In that case the innkeeper, as custodian, owes a duty to the owner of the chattel, as to mislaid or forgotten property. It has been held in such cases that

the innkeeper has the paramount custody.[1] The record in the instant case fails to disclose any evidence upon which to base a finding of abandonment, and plaintiff failed to predicate her rights on an abandonment in her complaint, alleging rather that the money she found in the safety deposit vault was lost property.

In the Toledo Trust Co. case, relied on by plaintiff, we find a situation which clearly differs from the facts relied upon by plaintiff for her right to recover. In that case the property was found in a part of the bank to which many persons had access and were admitted. The court there said, referring to the money found, (52 Ohio App. 377, 3 N. E. [2d] 663) "This money was not found in the safe deposit vault, nor in the safe deposit door-way." Other cases cited by plaintiff state the law generally as to lost or abandoned property, with which we have no quarrel, but these are all distinguishable in the light of the facts in the present case.

The money envelope in the instant case was found within an area set apart as the safety deposit vault, to which entrance was restricted to officers and employees of the bank and to those customers who paid rental for safety deposit boxes, who had registered, and who had obtained admittance by properly authenticated admittance tickets. There are factors present here which prevent the application of the ordinary law of finders of lost or abandoned property. The general rule is stated in 36 C. J. S., Finding Lost Goods, § 1, as follows:

"* * * Property in someone's possession cannot be found in the sense of the law of lost property; thus, if the article is in the possession and protection of the owner of the place where it is found, it is not lost in the legal sense. If the chattel is discovered in a public or semipublic place where the public generally is invited and expected to be, the proprietor of the premises occupies no relationship of agent or fiduciary toward the owner, which prevents its being considered a lost article, but, where it is found in a private place, where only a limited class of people have the right to be, or can be, and that class is composed of the customers of the owner of the premises, who

[1] See, Flax v. Monticello Realty Co. 185 Va. 474, 39 S. E. (2d) 308.

has the duty of preserving the property of his customers, it is in the constructive custody of the owner of the premises."

See, also, Pyle v. Springfield Marine Bank, 330 Ill. App. 1, 70 N. E. (2d) 257; Silcott v. Louisville Trust Co. 205 Ky. 234, 265 S. W. 612, 43 A. L. R. 28; Dolitsky v. Dollar Sav. Bank, 203 Misc. 262, 118 N. Y. S. (2d) 65.

■ We have carefully considered the record and the briefs filed by both parties together with the cases and authorities cited. We have come to the conclusion that, since the facts are not in dispute, the only question before us, and the controlling one, is whether the unmarked envelope with the money was found in a public or a private place.

It is undisputed that the bank maintained its safety deposit box and vault department for the accommodation of those persons only who became its lock-box patrons—a limited number of persons who paid a rental fee. In furnishing this service, the defendant incurred certain liabilities which might arise and became subject to certain well-defined duties, such as providing a safe place for storage of their patrons' boxes and in preventing unauthorized persons from gaining access to their contents. Reference has already been made to the separate location of the safety deposit vault, the method of gaining entrance by registration, and that the only entrance available was by way of a locked as well as guarded metal door. It must be said that the control and method of operation was maintained in a highly restrictive degree. It was not in any sense a public place such as a bank lobby. Only a limited class could enter and the department kept a strict check upon them. It could immediately ascertain the number of patrons who had entered on the day and at the time the envelope with the money contents was found.

■ We must conclude, therefore, that any property either mislaid or lost in that department, in the manner disclosed by the record, was deliverable to the defendant bank as agent or trustee for the true owner, who could upon the record be none other than one of its patrons, whether known or unknown. The defendant bank upon the facts in the instant case represents the owner and has the paramount

custody. See, Erickson v. Sinykin, *supra;* Pyle v. Springfield Marine Bank, *supra;* Silcott v. Louisville Trust Co. *supra;* Dolitsky v. Dollar Sav. Bank, *supra;* Foster v. Fidelity Safe Deposit Co. 264 Mo. 89, 174 S. W. 376, L. R. A. 1916A, 655. Where money was found on the floor of a booth outside the restricted area of a bank, see Manufacturers Safe Deposit Co. v. Cohen, 200 Misc. 334, 101 N. Y. S. (2d) 820.

As to abandonment, which plaintiff failed to present as an issue in the pleadings, it must be clearly proven, and mere lapse of time is not enough. We quote the following from 1 Am. Jur., Abandonment, § 13:

"\* \* \* Nor will it be deemed that money discovered on the ground or floor is abandoned, for, with nothing further appearing, it will be considered as having been casually and unknowingly dropped, and thus lost."

So far as the facts here permit us to view the situation as well as the authorities made available, the paramount custody of the bank indicates that it will have to hold the money until the true owner is found, or otherwise indefinitely.

The determination in this action is limited solely to the rights and remedies of the parties to the action. So far the original owner is unknown. Concededly he could not thus be a party to the action. The proceeding is one in personam, not in rem. Therefore, until the actual owner appears and establishes his ownership, there can be no final determination of his rights. See, Erickson v. Sinykin, *supra.*

We agree with the conclusions reached by the court below and the order of the trial court is hereby affirmed.

Affirmed.