BERNICE PASET, Plaintiff-Appellant, *v.* OLD ORCHARD BANK AND TRUST COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 76-1029

Opinion filed July 5, 1978.

Dehaan & Stronberg, of Chicago (Kenneth L. Levine, of counsel), for appellant.

Douglas W. Schlak and Meyers & Matthias, both of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

On May 8, 1974, the plaintiff, Bernice Paset, a safety deposit box subscriber at the defendant Old Orchard Bank (the bank), found $6,325 in currency on the seat of a chair in an examination booth in the safety deposit vault. The chair was partially under a table. The plaintiff notified officers of the bank and turned the money over to them. She then was told by bank officials that the bank would try to locate the owner, and that she could have the money if the owner was not located within 1 year.

The bank wrote to everyone who had been in the safety deposit vault area either on the day of, or on the day preceding, the discovery, stating that some property had been found and inviting the customers to describe any property they might have lost. No one reported the loss of currency, and the money remained unclaimed a year after it had been found. However, when the plaintiff requested the money, the bank refused to deliver it to her, explaining that it was obligated to hold the currency for the owner.

The safety deposit vault area of the bank was located on a lower floor of the bank. This area was separated from a lobby by a gate, and, according to an affidavit filed by the bank, entrance to the safety deposit vault area was restricted to bank employees and customers maintaining safety deposit boxes in the vault. The affidavit stated that no customer could enter this vault without the consent of a bank guard or employee stationed at the gate, and that customers were allowed to enter only after their signatures were verified. When a customer entered, a bank employee would accompany the customer to the safety deposit vault to obtain the box and then escort him to one of the 16 examination booths maintained in the area.

The plaintiff sought a declaratory judgment that the Illinois estray statute (Ill. Rev. Stat. 1975, ch. 50, par. 27 *et seq.*) was applicable to her discovery and granted her ownership of the $6,325. The circuit court judge, however, found that the money was "deemed mislaid," and concluded that despite the plaintiff's compliance with the requirements of the estray statute, that statute was not applicable. His order provided that the court was not determining ultimate ownership of the money, that if necessary the plaintiff's right to ownership could be determined in a separate action at a later date, and that the bank should continue to hold the money as bailee or trustee for the true owner. The plaintiff, appealing from this order, prays that this court enter a judgment declaring her the owner of the money.

The bank's position is that the estray statute is not applicable because the money was not lost in the sense the word "lost" is used in that statute. The bank contends that, under the common law, the money was mislaid by its owner rather than lost, and that the estray statute does not apply to mislaid property. In the alternative, the bank argues that the money was discovered not in a public place, but in a private area with access restricted to safety deposit box subscribers. The bank claims, therefore, that the money always was in its constructive possession or custody, either as owner of the premises or as bailee for an unknown and unidentified safety deposit box subscriber, and that property in someone's constructive possession or custody cannot be lost. As against the plaintiff, the bank claims to have the superior right to hold the money indefinitely, and in fact is required to do so until the true owner puts in his appearance.

This appeal, then, requires a determination of whether a finder of cash in an examining booth in a safety deposit vault may be a keeper under the Illinois estray statute and an analysis of the extent to which the common law concepts of lost and mislaid property apply to the statute.

The estray statute provides in sections 27 and 28:

"If any person or persons find any lost goods, money, bank notes, or other choses in action, of any description whatever, such person or persons shall inform the owner thereof, if known, * * * If the owner is unknown and if such property found is of the value of $15 or upwards, the finder or finders shall, within 5 days after such finding as aforesaid, appear before some circuit judge residing in the county, and make affidavit of the description thereof, the time and place when and where the same was found, that no alteration has been made in the appearance thereof since the finding of the same, that the owner thereof is unknown to him and that he has not secreted, withheld or disposed of any part thereof. The judge shall enter an order stating the value of the property found as near as he can ascertain. A certified copy of such order and the affidavit of the finder shall, within 10 days after the order has been entered, be transmitted to the county clerk to be recorded in his estray book, and filed in his office." Ill. Rev. Stat. 1975, ch. 50, par. 27.

"If the value thereof exceeds the sum of $15, the county clerk, within 20 days after receiving the certified copy of the judge's order shall cause an advertisement to be set up on the court house door, and in 3 other of the most public places in the county, and also a notice thereof to be published for 3 weeks successively in some public newspaper printed in this state and if the owner of such goods, money, bank notes, or other choses in action does not appear and claim the same * * * within one year after the

advertisement thereof as aforesaid, the ownership of such property shall vest in the finder." (Ill. Rev. Stat. 1975, ch. 50, par. 28.)

The Illinois estray statute's principal purposes are to encourage and facilitate the return of property to the true owner, and then to reward a finder for his honesty if the property remains unclaimed. The statute provides an incentive for finders to report their discoveries by making it possible for them, after the passage of the requisite time, to acquire legal title to the property they have found.[1] (See Comment, *Lost, Mislaid, and Abandoned Property*, 8 Fordham L. Rev. 222, 234-235 (1939).) By directing the county clerk to publicize and advertise the property, the statute further enhances the opportunity of the owner to recover what he has lost.

■■ ■ Traditionally, the common law has treated lost and mislaid property differently for the purposes of determining ownership of property someone has found. Mislaid property is that which is intentionally put in a certain place and later forgotten; at common law a finder acquires no rights to mislaid property. The element of intentional deposit present in the case of mislaid property is absent in the case of lost property, for property is deemed lost when it is unintentionally separated from the dominion of its owner. The general rule is that the finder is entitled to possession of lost property against everyone except the true owner. We are not concerned in this case with abandoned property where the owner, intending to relinquish all rights to his property, leaves it free to be appropriated by any other person. Although at common law the finder is entitled to keep abandoned property, the plaintiff has not taken the position that the money here was abandoned. *Jackson v. Steinberg* (1948), 186 Ore. 129, 200 P.2d 376, 377; 1 Am. Jr. 2d *Abandoned, Lost, and Unclaimed Property* §§1, 2 (1962).

As is usual in cases involving a determination of whether property is lost or mislaid, this court is not here assisted by direct evidence, for, obviously, the true owner is not available to state what his intent was. Also, because all the evidence here has been presented by affidavit or stipulation, this court is in as advantageous a position as the trial judge to determine whether the money was lost or mislaid. Our conclusion is that the estray statute should be applied, and ownership of the money vested in the plaintiff finder.

Thus, we do not accept the bank's initial argument that the money was mislaid rather than lost. It is complete speculation to infer, as the bank urges, that the money was deliberately placed by its owner on the chair located partially under a table in the examining booth, and then forgotten.

---

[1] This incentive did not exist until a 1953 amendment; the statute originally provided that after 6 months the finder was required to deliver the property to county authorities.

If the money was intentionally placed on the chair by someone who forgot where he left it, the bank's notice to safety deposit box subscribers should have alerted the owner. The failure of an owner to appear to claim the money in the interval since its discovery is affirmative evidence that the property was not mislaid. *Toledo Trust Co. v. Simmons* (1935), 52 Ohio App. 373, 3 N.E.2d 661; *Burnley v. First National Bank* (1953), 87 Pa. D. & C. 433.

■■ Because the evidence, though ambiguous, tends to indicate that the money probably was not mislaid, and because neither party contends that the money was abandoned, we conclude that the ambiguity should, as a matter of public policy, be resolved in favor of the presumption that the money was lost. This conclusion is in harmony with the above mentioned purposes of the estray statute, for it construes the statute liberally rather than technically, with the result that the statute is brought into play rather than rejected. Such an application of the statute better effectuates the legislature's goal of restoring property to a true owner; it provides incentive for a finder to report his discovery by rewarding him if the true owner does not appear within the statutorily determined time limit. Accordingly, we reject the bank's first contention that the money was mislaid and the estray statute irrelevant, and conclude that the money was "lost," and so encompassed by the Illinois estray statute.

■■ We also reject the bank's alternative argument that the money, having been found in a place from which the general public was excluded, was always in the bank's constructive custody or possession, and therefore could not have been "lost," as that word is used in the estray statute. In Illinois the relationship of a safety deposit company to the box owner is that of bailor and bailee. As bailee a company has possession of a box and its contents even though the company has no knowledge of the character or quantity of the box's contents. (*National Safe Deposit Co. v. Stead* (1911), 250 Ill. 584, 95 N.E. 973.) This relationship applies, however, only to a box and to any property in the box; it does not apply to property which never was deposited in a box. In this case, it is impossible for any court to determine how the money was brought into the safety deposit vault area, whether the money was ever placed in a safety deposit box, who carried the money into the vault area, or who was the money's owner. Consequently, any rights or duties the bank had with respect to the money would have to be based on the untenable fiction that the bank had constructive possession or custody of all property in its vault premises, no matter how that property arrived there. In construing a word used in a statute, a court must assess the word from the perspective of the statute's purpose—that is, the goal it seeks to attain. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) Because of the public need the estray statute serves, the significance of the word "lost" in

the statute should not be diminished by an abstruse fiction of constructive possession which results in bypassing the statute.

The statute's requirements provide additional reasons for rejecting this fiction of constructive possession. By imposing liability on a finder of property who fails to comply with the provisions of the act, the estray statute itself indicates that the legislature never intended to circumscribe the word "lost" with technical or restrictive concepts. The statute provides in section 34:

> "If any person taking up any estray or other property, or *finding any property*, fails to comply with the provisions of this Act, he shall, for every such offense, forfeit and pay to the informer the sum of $10, with costs, recoverable before any circuit judge residing in the county where such offense shall be committed; one-half to the use of the county, and the other half to the use of the person suing for the same." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 50, par. 34.)

It is not reasonable that the legislature would have, in section 34, imposed a duty upon a finder of property to comply with the provisions of the estray act, if, as the bank argues, it also intended to use another paragraph of the act, section 27, to direct that under certain circumstances found property was not even to be included within the estray statute. Also, a statute is not to be construed in a manner which results in absurdity (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 302 N.E.2d 64; *Illinois Chiropractic Society v. Giello* (1960), 18 Ill. 2d 306, 164 N.E.2d 47), and it is not sensible for the estray statute to impose a responsibility upon a person "finding any property" to wade through—at his peril—such technical legal concepts as lost and mislaid property, public or private place, and constructive possession, to decide whether section 34 of the statute obligates him to appear before the circuit court and report his discovery.

Further, whether the property was discovered in a public or private place should not be permitted to preclude the application of the estray statute. The statute itself makes no distinction between "public" and "private" places of finding. In *Pyle v. Springfield Marine Bank* (1946), 330 Ill. App. 1, 70 N.E.2d 257, the only Illinois case which deals with the rights of finders of valuable property in a safety deposit vault area with restricted access, the court concluded that because a limited class of persons was licensed to enter a bank's safety deposit box vault area, and then only under controlled and restricted procedures, the vault area had the characteritics and attributes of a private place. Based on this characterization of the vault area as a private place, the court held that it made no difference whether property discovered in that area was lost or mislaid. Because the property was discovered in a private place, the court

decided that the bank should have the right to possession and custody of the property until the lawful owner was ascertained.

The *Pyle* court, though, expressly stated that its determination involved only the right of custody of the property, and not the ownership thereof. The issue of whether the finder or the bank would be entitled to the property ultimately, if the owner did not appear, was not considered in *Pyle*. In addition, neither party in *Pyle* requested the court to apply the Illinois estray statute and the court never mentioned the statute. The apparent explanation for ignoring the estray statute in that case was that the statute then in effect provided that if property was not claimed within 6 months it was to be delivered to the county treasury or the county clerk. Obviously, neither the finder nor the bank desired to have the property turned over to a county official.

Therefore, looking at both the common law and estray statute, we accept the *Pyle* conclusion that where property is found in a bank safety deposit vault area, the bank as owner of the premises should hold the property on a temporary basis as custodian until ownership is determined. This is a just result not inconsistent with the purposes of the estray statute, for the return of property to its true owner is best promoted by requiring the finder to leave the property temporarily with the owner of the premises where it was found. (See Comment, *Lost, Mislaid and Abandoned Property*, 8 Fordham L. Rev. 222, 234-35 (1939); Morton, *Public Policy and the Finders Cases*, 1 Wyo. L. J. 101 (1946).) We merely amplify the holding in *Pyle* by ruling that the estray statute provides the proper method for resolving the eventual question of ownership of the property if the true owner does not claim it, a problem which the *Pyle* court expressly stated it was not reaching. Therefore, we conclude that the estray statute vested ownership in the finder of the property in this case when the owner did not appear after the legislatively designated time of 1 year—at which point the bank's temporary custody and possession was terminated.

Applying the estray statute to the plaintiff's find is consistent not only with *Pyle* but with the cases in other jurisdictions on this issue.[2] *Silcott v.*

---

[2] The cases cited in this paragraph appear to be the only decisions in the United States dealing with the rights of finders of property in safety deposit vault areas. However, the rights of a finder of lost or mislaid property have been a favored topic of law review commentators for many years: Riesman, *Possession and The Law of Finders*, 52 Harv. L. Rev. 1105 (1939); Paulus, *Finder v. Locus In Quo—An Outline*, 6 Hastings L.J. 180 (1955); Aigler, *Rights of Finders*, 21 Mich. L. Rev. 664 (1923); Cohen, *The Finders Cases Revisited*, 48 Tex. L. Rev. 1001 (1970); Morton, *Public Policy and The Finders Cases*, 1 Wyo. L.J. 101 (1946); Note, *Personal Property—Finding Lost Goods—Rights of Finder and Owner of Locus in Quo in Lost and Mislaid Personal Property*, 21 Minn. L. Rev. 191 (1936); Comment, *Lost, Mislaid, and Abandoned Property*, 8 Fordham L. Rev. 222 (1939); 17 U. Cin. L. Rev. 83 (1948); 4 Wash. & Lee L. Rev. 214 (1947); Comment, *Finders—Rights as Against the Owner of the Locus in Quo*, 46 Mich. L. Rev. 235 (1947); 10 Cornell L. Q. 255 (1925).

*Louisville Trust Co.* (1924), 205 Ky. 234, 265 S.W. 612, like *Pyle*, involved only the issue of the right to temporary custody or possession of the property discovered, not the eventual ownership of that property. In *Silcott, Dennis v. Northwestern National Bank* (1957), 249 Minn. 130, 81 N.W.2d 254, and *Dolitsky v. Dollar Savings Bank* (1952), 118 N.Y.S. 2d 65, 203 Misc. 262, the court, as in *Pyle*, was not faced with the problem of applying an estray statute, and no reference was made to a State estray statute. And, although a Missouri estray statute was referred to in *Foster v. Fidelity Safe Deposit Co.* (1912), 162 Mo. App. 165, 145 S.W. 139, *aff'd* (1915), 264 Mo. 89, 174 S.W. 376, the court nevertheless stated:

> "Neither Plaintiff nor Defendant claims to be the owner of the money. * * * The question for decision, therefore, is not who owns the money, but which of the parties is entitled to the possession of it; or, better stated, which is the proper custodian." (*Foster*, 162 Mo. App. 165, 167, 145 S.W. 139, 140.)

Thus, because the court in *Foster* indicated that the action was one for possession rather than ownership, reference to the Missouri estray statute was merely dictum.

While the bank relies on another Illinois case, *Bishop v. Ellsworth* (1968), 91 Ill. App. 2d 386, 234 N.E.2d 49, where the court decided in favor of the owner of land and against a trespasser who discovered money on the land in a bottle partially imbedded in the soil, that case clearly is irrelevant here. The court in that case held that a trespasser has no rights to property he finds, and any reference in that decision to the inapplicability of the estray statute is dictum.

The alternative to the conclusion we reach is impractical. It would, as the court in *Dolitsky* suggested, label the bank a gratuitous bailee for an unknown owner, with the requirement that the bank hold the property indefinitely—despite the probability that after 4 years, the owner will never appear. The bank's record of its safety deposit box subscribers who visited the vault on the day of or the day preceding the plaintiff's discovery gave the bank the opportunity to search for the owner among this limited group. The bank also had sufficient time to contact any subscriber who had not been in his box since the date the plaintiff discovered the money. Consequently, in view of the opportunities the bank had to search out the owner of the money among this limited group, of the notice the bank gave to that group, and of the plaintiff's undisputed compliance with the estray statute, vesting the ownership of the money in the finder is a more pragmatic and sensible solution than having the bank continue to hold the money indefinitely.[3]

---

[3] See Riesman, *Possession and The Law of Finders*, 52 Harv. L. Rev. 1105, 1125 (1939); Morton, *Public Policy and the Finders Cases*, 1 Wyo. L. J. 101, 109-110 (1946); and Note, *Personal Property—Finding Lost Goods—Rights of Finder and Locus In Quo in Lost and*

542

Accordingly, the judgment of the circuit court is reversed and the case is remanded, directions to enter judgment in favor of the plaintiff finder.

Judgment reversed and remanded with directions.

McNAMARA and McGILLICUDDY, JJ., concur.

---

*Mislaid Personal Property*, 21 Minn. L. Rev. 191, 201, whose authors would reach the same conclusion, as well as Comments, *Lost, Mislaid and Abandoned Property*, 8 Fordham L. Rev. 222 (1939), whose author is in partial agreement with the result we come to in this case. The last comment proposes that if after the passage of a specified period of time the owner does not appear, the finder and the owner of the *locus in quo* should share the property equally.