**In the Matter of UNKNOWN SILVER COINS.**

**No. 15489.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 2, 1987.

Decided Jan. 20, 1988.

Rehearing Denied Feb. 18, 1988.

Catherine E. Mattson of LaFleur, La-Fleur & LaFleur, Rapid City, for appellant Kjerstad.

Stan H. Anker of Anker Law Office, Rapid City, for appellees.

SABERS, Justice.

Marvin Kjerstad, the court-determined owner of certain found coins, appeals the reward and the amount of the reward to the finders. We affirm in part, reverse in part, and remand.

### Facts

On August 19, 1985, as she was picking berries with her daughter and granddaughter, Wanda Thayer discovered loose coins on the ground in an area nine miles from Hill City, South Dakota. Wanda and her daughter, Dorothy Ross, searched and recovered approximately $350 in fifty cent pieces. They left and returned to the site later with Wanda's husband, Ken, and her son, Dennis. That evening they found approximately $2,900 in coins.

On August 21, 1985, Wanda, her husband, her son, her two daughters, and a son-in-law returned to the site and recovered approximately $5,000 more in coins.

On August 26, 1985, the finders spent $39 of the found coins on pizza. The restaurant manager became concerned about the coins and contacted the Custer County Sheriff. Deputy Sheriff Don Bahr contacted Wanda's son-in-law about the money. Initially, the son-in-law lied and stated that the money was from his mother. Later, he admitted that the money had been found in the Hills. On August 27, 1985, the finders and a Pennington County deputy sheriff returned to the site and recovered another $200 in coins. The finders turned over all the found coins to the deputy sheriff except for $1,079 which they previously spent.

Ed Bintliff, Wanda's son-in-law, testified that he spent approximately $740 on the deposit and first-month's rent of a house. Dorothy Ross testified that she turned in $100 in quarters to the Hill City Bar in exchange for cash. Wanda testified that her son, Dennis, had exchanged about $200 in coins at the Custer bank.

After a two-day trial, the court determined that Marvin Kjerstad was the owner of the coins found by Wanda and her family. The trial court found that coins were stolen several years earlier by Marvin's brother, Kendall. Kendall buried some of the money at the Hill City site. Marvin was unaware that his coins had been stolen until Kendall confessed to the theft months after the coins were found. The trial court also found that it was unlikely that Kendall would have come forward to admit the theft if the finders had not found the coins. The trial court awarded the finders a reward of 30% of the coins recovered, less the $1,079 previously spent.

### Issues

DID THE TRIAL COURT ABUSE ITS DISCRETION IN AWARDING THE FINDERS A REWARD? IF IT WAS PROPER TO GIVE AN AWARD, WAS THE AMOUNT EXCESSIVE?

#### 1. The Reward

SDCL 43–41–6 states:

**Compensation of finder—Necessary expenses—Preservation of lost thing—Reward for keeping.** The finder of a thing is entitled to compensation for all expenses necessarily incurred by him in its preservation, and for any other service necessarily performed by him about it, and to a reasonable reward for keeping it.

In the conclusions of law, the court awarded the finders a reward "under SDCL 43–41–6 and/or the equity powers of this court." The court also noted orally that a

valid public policy was served by rewarding finders of lost property.

Generally, stolen property found by persons not associated with the taking, has been classified as "lost" for the purposes of applying lost or abandoned property statutes. *Automobile Ins. Co. of Hartford, Conn. v. Kirby,* 25 Ala.App. 245, 144 So. 123 (1932); *Flood v. City Nat. Bank of Clinton,* 218 Iowa 898, 253 N.W. 509 (1934); Annot. 23 A.L.R. 4th 1025 (1983).

■ SDCL 43–41–1 states, "One who finds a thing lost is not bound to take charge of it; but if he does so, he is thenceforward a depository for the owner, with the rights and obligations of a depository for hire."[1] SDCL 43–41–2 requires a finder of lost personal property who finds such property "under circumstances which give him knowledge or means of inquiry as to the true owner," to "make all reasonable efforts to ascertain and notify such owner[.]" When there are no circumstances giving the finder such knowledge or means of inquiry, he is required to have the property advertised and appraised. Although the finder may, under SDCL 43–41–4, store the property "with any responsible person of good character," chapter 43–41 does not require the finder to notify law enforcement authorities of the find or deliver the found property to their custody.

■ Reading these relevant statutes as a whole, the question is whether the finders are entitled to compensation for all expenses necessarily incurred in its preservation, for any other service necessarily performed, and a reasonable reward for keeping it.

The finders testified that they *intended* to turn the money in to the authorities so that the rightful owner might be located, but they delayed out of fear. They claimed that they were afraid that the revelation of the existence and possession of such a large sum of money would place them in danger. The credibility of witnesses and the weight to be accorded their testimony is for the trial court. *Nicolaus v. Deming,*

81 S.D. 626, 139 N.W.2d 875 (1966); *Sperry Corp. v. Schaeffer,* 394 N.W.2d 727 (S.D. 1986). The fact that the finders did nothing to find the true owner of the coins during the first seven days prior to being contacted by the sheriff's office, spent approximately one-tenth of the money recovered, and lied about the source of the money creates doubt as to their original intention to deliver the money or, at a minimum, the subsequent abandonment of that intention. The finders did not have the coins appraised and were unaware of the true value of the coins. The coins spent by the finders were exchanged based on their face value. The trial court accepted the explanation offered by the finders and was not persuaded that the finders intended to keep the money.

■ The trial court could properly find that the finders were entitled to compensation for all expenses necessarily incurred by them in its preservation, even though these expenses were minimal. The trial court could also award compensation for any other service necessarily performed by the finders about it, which included the digging, removing, and transportation to town. The trial court could also provide a reasonable reward for keeping and storing the bulk of the coins. Although the findings do not track the exact wording of the relevant statutes, the finders did find the property which was not otherwise likely to be found, and they did preserve the balance of the coins. The trial court was persuaded by the evidence that the finders had expended sufficient efforts to entitle them to a reward. The findings of fact as to a reward are not clearly erroneous. Therefore, the trial court did not abuse its discretion in providing a reward and we affirm that portion. *In re Estate of Smith,* 401 N.W.2d 736, 738 (S.D.1987); *People in Interest of D.H.,* 408 N.W.2d 743 (S.D.1987); *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984).

### 2. *Amount of Reward*

■ SDCL 43–41–6 provides for a *"reasonable"* reward to the finder of a lost

---

1. SDCL 43–39–8 states that the duties of a depository are set forth in SDCL 43–39–9 to 43–39–29, inclusive. SDCL 43–39–10 requires that a depository for hire must use at least ordinary care for the preservation of the thing deposited.

thing. The term "reasonable" is not defined under this statute nor has its meaning under this statute been interpreted.

Kjerstad notes that the neighboring states of Iowa and Nebraska mandate a 10% finder's fee *by* statute. Iowa Statutes § 644.13 (1950); Revised Statutes of Nebraska § 69–1317 (1986). However, other states have statutes with identical or similar "reasonable reward" language: *e.g.*, Code of Alabama, § 35–12–3 (1977); Michigan Statutes Annot., § 18.707 [M.C.L.A. § 434.7] (1986); Montana Code Annot., § 70–5–105 (1985); Oklahoma Statutes Annot., 15: § 514 (1966). In enacting SDCL 43–41–6 the South Dakota legislature did not specify a certain percentage reward. Apparently, it was the intent of the legislature to allow the trial court to fix the appropriate amount of the reward based upon the facts and circumstances of each individual case.

The Judgment Awarding the Reward states that the finders would be awarded 30% of the coins as follows:[2]

30% of 62 silver dollars,

30% of $9,493 in fifty cent pieces,

30% of $725 in quarters,

30% of $185 in dimes,

30% of .50 in nickels,

30% of .30 in pennies.

The total reward under this division comes to a face value amount of $3,194.74. Subtracting the $1,079.00 previously spent, the finders would receive $2,060.74 of the remaining coins.

 The lost property statutes reflect a public policy favoring honesty. "The Illinois estray statute's principal purposes are to encourage and facilitate the return of property to the true owner, and then to reward a finder for his honesty...." *Paset v. Old Orchard Bank and Trust Co.*, 62 Ill.App.3d 534, 19 Ill.Dec. 389, 393, 378 N.E.2d 1264, 1268 (1978).

 The trial court considered reward percentages ranging up to 50%. A reward of 50% of the value of found property might be appropriate to a finder who had recovered and preserved the property at great risk and with great effort, and who made honest efforts to return the property to its rightful owner. Similarly, a reward of 30% might be reasonable compensation to a finder who took some risk and/or expended time, money, and effort in the recovery, preservation, and return of the lost property.

These finders expended some time and effort to recover the property as some of the coins were buried beneath the surface. Although they testified as to their belief that the storage of the coins posed a great personal risk, apparently it was not so great a risk as to prevent them from spending $1,079. Preservation of lost property means something more than not depleting all of the found property. Although the finders eventually cooperated fully with law enforcement, initially they were not honest or forthright. For these reasons, a reward of 30% to these finders is unreasonably high.

 The trial court also misconstrued the meaning of SDCL 43–41–6 by making the reward a portion of the found property. Had the finders recovered a car stolen from Marvin Kjerstad, it would be unreasonable to give them a bumper or the engine. Nothing in the statute suggests that a reward results in a division of the recovered property. The trial court is authorized by statute to reward the finders and should determine the amount or percentage of the reward. Here, however, it was unreasonable to require the true owner to give up part of his collection as the reward. The trial court should set the reward in some form of currency. The failure to do

---

**2.** The trial court's Decision Allowing Reward to Finders, dated July 23rd, 1986, awarded the finders a reward "in the amount of 30% of the gross amount of the recovered property, minus the amount already spent by the finders." Regardless of whether an appraisal of the property was ever conducted, the trial court made the reward based upon the face value of the coins, as is clear from the Judgment Awarding Reward to Finders, also dated July 23rd, 1986: "[The] Court having entered an Order authorizing *a count* of the coins and pursuant to that count, it is hereby Ordered that the finders be awarded thirty percent (30%) of the silver coins...." (emphasis added).

so together with the unreasonably high reward constituted an abuse of discretion.

We remand to the trial court for a determination of a reasonable reward consistent with this opinion.

WUEST, C.J., and HENDERSON, J., concur.

MORGAN and MILLER, JJ., dissent.

MILLER, Justice (dissenting).

Although I fully agree with the legal analysis of the majority, I must dissent because I am convinced that the law as stated therein is not properly applied to these facts.

I agree with the majority that the public policy considerations behind our statutory scheme dealing with lost and misplaced property serves to encourage finders to preserve the property and ascertain the true owners. Then, and only then, are the finders to be properly compensated for their honesty and their efforts.

As the majority correctly indicates, the question here is whether the finders used ordinary care to preserve the coins and whether they made reasonable efforts to ascertain the owner, or to appraise and advertise the property. Then, after reciting a factual scenario clearly establishing that the finders failed to fulfill any of these duties, the majority proceeds to uphold the reward. This baffles me!

What were the finders' obligations as honest citizens? In addition to the common sense duty to notify authorities, they had various statutory obligations. Under penalty of criminal (felony) prosecution, they were obligated to make reasonable efforts to restore the property to the rightful owner (SDCL 22–30A–6); they had the duties of a depository for hire (SDCL 43–41–1); and they had the duty to advertise and appraise the property (SDCL 43–41–2); or, they could have exonerated themselves from liability by storing the coins with a reasonable person (SDCL 43–41–4). Did they fulfill *any* of these obligations? Absolutely not!

What did the finders do? Rather than contacting authorities, they proceeded to *spend over $1,000* (face value) on pizza, beer, house rent, etc. Although they later cooperated with law enforcement in recovering some of the coins, they initially *lied* about the source of the money when contacted by authorities.

In my view, finders have received their just reward, namely the amount of money they spent prior to being contacted by law enforcement. They have never offered to return any of the money spent by them. They have merely been required to deduct that amount from the additional reward granted by the trial court.

To further reward these people is, in my view, clearly erroneous and borders on the preposterous. The majority perpetuates and compounds the clearly erroneous action by ratifying it. The majority decision not only rewards appellees' misconduct in this case but also encourages similar misconduct by others in the future. No valid public policy considerations are fostered thereby.

I am authorized to state that Justice MORGAN joins in this dissent.